# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MATTHEW D. BARRETT**
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROLANDO MIGUEL-GASPAR MATEO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  09A04-1201-CR-17 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-1008-FA-9

**September 17, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Rolando Mateo appeals his conviction and sentence for Aggravated Battery,[1] a class B felony. Specifically, Mateo contends that the trial court erred in excluding evidence alleging that several of the State's witnesses were members of a criminal gang and that two knives were erroneously admitted into evidence. Mateo also argues that the evidence was insufficient to support his conviction for aggravated battery, that there was not sufficient evidence to disprove his claim of self-defense, that the State used "perjured" testimony when presenting its case, that the jury was improperly instructed on accomplice liability, and that he was improperly sentenced.

Finding the evidence sufficient and concluding that there was no other error, we affirm the judgment of the trial court.

FACTS

On August 7, 2010, seventeen-year-old Bernard and fourteen-year-old Clarence Brock (collectively, the Brocks) went to Trustin McFarland and Nicole Graves's residence in Logansport to attend a party. Several other mutual friends also attended the party.

At some point, Mateo and his "street-gang brother," Alberto Santos, arrived at the house. Graves went outside to talk to Mateo, and repeatedly told him to leave. Mateo responded that he was going to slash the tires of a car that was parked in front of Graves's house. The car belonged to Andrew Isley, another guest at the party. Mateo, in fact, slashed the tires of Isley's car.

---

[1] Ind. Code § 35-42-2-1.5.

Thereafter, Mateo ran into a nearby alley behind the properties across the street from Graves's and McFarland's residence. As Mateo ran to the alley, he taunted the partygoers, yelling at them to come outside and fight. Graves went back inside the house and told the guests what Mateo had done. Most of the guests ran outside. Five of them chased after Mateo and Santos. At some point, Bernard saw Clarence and the others run into the alley, and Bernard followed them because he was concerned for his younger brother.

Six individuals found Mateo and Santos waiting for them in the middle of the alley. Mateo had two knives and Santos was armed with one. Paul Melton began to challenge Santos to a fight when Clarence, who was not armed, shoved Melton aside. Santos then squared off with Clarence. When Bernard noticed that Santos was armed, he took a baseball bat from one of the other individuals and stepped between Clarence and Santos. Santos slashed at Bernard with the knife, striking the bat as Bernard backed Santos away from Clarence. Mateo then ran toward Clarence and stabbed him in the side. As Mateo was preparing to stab Clarence again, Bernard threw the baseball bat at Mateo.

Clarence and the others ran from the alley. Bernard, who remained, saw Mateo and Santos run in the opposite direction. Bernard pursued Mateo and Santos. When Mateo and Santos realized that it was only Bernard who was pursuing them, they stopped and turned toward Bernard. Santos stabbed Bernard in the stomach and the chest. Mateo

3

then stabbed Bernard in the right side of the chest, on the wrist, and three times in the back. Mateo also hit Bernard in the head with the baseball bat.

Notwithstanding the stab wounds, Bernard continued pursuing Mateo and Santos. Bernard later recalled that he paused at a street corner, lifted his shirt, and "saw [his] meat hanging out of [his] stomach." Tr. p. 761-62. Thereafter, Bernard decided to return to McFarland and Graves's house. McFarland found Bernard and helped him back to the house. By that time, Bernard's stomach was "falling out." Id. at 664. An ambulance arrived and Clarence remarked that he "thought [Bernard] was dying. . . ." Id. at 704.

Clarence spent two weeks in the hospital and required three surgeries. Bernard was transported by helicopter to Fort Wayne for treatment. Bernard spent nearly one year recovering and was unable to use one of his arms because his tendons had been sliced. Bernard suffered from severe muscle spasms in his stomach, had no feeling in his forearm, and could not lift more than twenty pounds until shortly before the trial.

On August 10, 2010, Mateo was charged with attempted murder, a class A felony. And on September 30, 2010, the State filed an additional count of aggravated battery, a class B felony against Mateo. On November 10, 2011, Mateo filed "Defendant's Motion to Allow Evidence at Trial Re: Gang Membership or Affiliation of Witnesses Pursuant to Indiana Evidence Rule 404(b)." Appellant's App. p. 35-120. A hearing was conducted on Mateo's motion on December 8, 2011, which the trial court subsequently denied.

4

On December 9, 2011, the State filed a motion to amend the charging information to add identical charges that related to the stabbing of Clarence. Following a hearing on that motion, the trial court denied the State's request.

A three-day jury trial was conducted on December 14, 15, and 16, 2011. Following the presentation of the evidence, the jury returned a guilty verdict for the aggravated battery count but found Mateo not guilty of attempted murder.

At the sentencing hearing that was conducted on January 9, 2012, the State asked for a maximum sentence of twenty years imprisonment. The trial court found in aggravation that Mateo and Santos had inflicted multiple stab wounds on Bernard, that Mateo had been assessed as presenting a high risk of recidivism, and that Mateo had a significant criminal history. Although the trial court considered Mateo's age as a mitigating circumstance, it determined that this fact was outweighed by the aggravating circumstances. The trial court then sentenced Mateo to twenty years of incarceration. Mateo now appeals.

## DISCUSSION AND DECISION

### I. Evidence of Gang Activity

Mateo first argues that his conviction must be reversed because the trial court improperly excluded evidence that pertained to various State's witnesses' involvement in gang activity. Mateo argues that such evidence should have been admitted because proof of gang affiliation is routinely admitted as proof of motive to commit an alleged violent crime.

In resolving this issue, we initially observe that the decision to exclude evidence lies within the trial court's sound discretion and is afforded great deference on appeal. Bacher v. State, 686 N.E.2d 791, 793 (Ind. 1997). Evidence of prior crimes is admissible if (1) the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) the probative value of the evidence is not significantly outweighed by its prejudicial effect. Hicks v. State, 690 N.E.2d 215, 219 (Ind. 1997). Under the relevance prong of this analysis, the trial court may consider any factor that it would ordinarily consider under Indiana Evidence Rule 402.

Indiana Evidence Rule 404(b) specifically enumerates some of the factors that a trial court may consider when determining whether to admit evidence of past crimes, "such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In this case, Mateo desired to present evidence that three of the State's witnesses were members of gangs to show their motives for starting a fight with him. Mateo's counsel explained, "it's 404B, the case that we cited, gang membership, it's probative of motive to otherwise complete these types of senseless acts of violence. Gangs are violent. Membership enhances that probability that they, you know, they're gonna do something bad here." Tr. p. 49. Ultimately, the court pressed Mateo on his reason for wanting to present the evidence:

THE COURT: And that, what, under 404(b), how does that fit in with 404(b)? You're just showing that he acted in, in conformance with the gang member, propensity to beat people up, yeah –

MR. BARRETT: Right, it's permitted.

Tr. p. 57.

When considering the above exchange, we find that Mateo's proposed inference is precisely what Rule 404(b) forbids. See Cline v. State, 726 N.E.2d 1249, 1252 (Ind. 2000) (observing that the trial court properly excluded evidence of gang affiliation and the individual's prior violent conduct when the defendant sought to introduce evidence of another's prior acts for the sole purpose of demonstrating that because that individual had acted violently in the past, he likely acted in conformity with those acts).

Notwithstanding the rule in Cline, Mateo directs us to Williams v. State, 690 N.E.2d 162, 173 (Ind. 1997), for the proposition that gang evidence is "routinely admitted as proof of motive to commit an alleged violent crime." Appellant's Br. p. 17. Williams represents an exception to the general prohibition, and that exception is narrow. More specifically, the defendant's gang membership was relevant to provide a motive to an otherwise senseless violent act, which was a drive-by shooting of an apartment building in which a sixteen-year-old girl was killed in a hail of sixty-five bullets fired at the apartment building. Williams, 690 N.E.2d at 165.

Here, the motive for the confrontation between Mateo and the victims is readily explainable: Mateo had recently slashed the tires of the victims' friend's vehicle for no apparent reason. Tr. p. 347, 357, 411, 469, 656, 700, 747. Indeed, on cross-examination,

7

Mateo acknowledged that the individuals at the party went after him and Santos because Mateo had slashed the tires. Id. at 347, 439, 670-71, 715, 788, 795, 802.

If membership in a gang was at all relevant to show motive, it would have established why Mateo and Santos showed up at the party wanting to cause trouble. Ultimately, it was Mateo and Santos who sought out the individuals at the party, not the other way around. On the other hand, Mateo opposed the introduction of any evidence suggesting that he was a member of a gang. Tr. p. 652. Mateo would likely have wanted to use gang membership as a bludgeon against the State's witnesses, while simultaneously arguing that mentioning his own gang membership was highly prejudicial evidence prohibited under Rule 404(b). In fact, it was established at sentencing that Mateo is a member of the SUR 13 street gang. Thus, we can only surmise that he benefited as much or more from the exclusion of evidence at trial concerning gang membership than the State did. PSI p. 5. As a result, we conclude that the trial court properly excluded the involvement of the State's witnesses in gang activity.

## II.  Admission of Knives Into Evidence

Mateo next claims that the trial court erred in admitting the knives into evidence. Specifically, Mateo argues that the State failed to establish a proper foundation and chain of custody for their admission.

There are generally two types of chain of custody depending on the nature of the item that is produced in court. For fungible items such as blood and drugs, an adequate foundation is laid when the whereabouts of an exhibit is shown from the time it came into

8

the possession of the police. Bell v. State, 610 N.E.2d 229, 233 (Ind. 1993). A proper foundation for the introduction of such physical evidence is established if a witness is able to identify the item, and the item is relevant to the disposition of the case. Id. The State can lay an adequate foundation by providing a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next. Id. If the State presents evidence that strongly suggests the exact whereabouts of the evidence at all times, that is sufficient. Id. On the other hand, for nonfungible items like guns and vehicles, the State need only show that the item is what it is purported to be and that it is in a substantially unchanged state. Trotter v. State, 559 N.E.2d 585, 591 (Ind. 1990).

Because the knives are nonfungible items, the State only needed to show that they were the knives used in the incident and that they were in the same condition at trial as when they were found. Id. Detective Bean testified that State's Exhibits 4 and 5 were the knives that he collected in the alley shortly after the stabbing incidents. Tr. p. 247-59. The knives in question came into the possession of the police when Detective Bean recovered the knives in the alleyway where the stabbings occurred. Tr. p. 240, 243. Mateo challenges the chain of custody because Detective Bean did not question neighbors or partygoers about the knives and did not display them to the victims. Detective Bean also could not testify as to how long the knives had been in the location where he found them, whether they had been moved before he discovered them, or how the blood on the knives came to be there. Appellant's Br. p. 21. In our view, these

9

concerns are irrelevant as to whether the police maintained a proper chain of custody once the knives came into their possession.

The evidence established that Detective Bean recovered the knives on the evening of August 7, 2010, or during the early morning hours of August 8, after photographing them and diagramming their locations. Tr. p. 242. After collecting, bagging, and marking the evidence, Detective Bean gave the knives to the evidence clerk, Sergeant Brad Rozzi. Id. at 249. It was then established that the knives remained in the evidence room under lock and key until they were sent to the State Police Lab for testing. Id. at 635, 639.

Kimberly Masden at the Indiana State Police (ISP) lab performed serology and DNA testing on the knives. Id. at 590. Sergeant Rozzi then retrieved the knives from the ISP lab and they remained in his custody until Mateo's trial. Id. at 639. At every point between the collection of the knives in the alley by Detective Bean until they were unsealed in open court, the whereabouts of the knives were known. Detective Bean testified upon opening the sealed packages containing the knives that they were the same knives as those he collected in the alleyway. Id. at 259. In light of this evidence, we conclude that the State established a proper chain of custody for the admission of the knives.

In sum, whether the knives were the same ones that were used in the stabbings of the Brocks was a question of the fact for the jury ultimately bearing upon the weight that was to be assigned to the knives that the police collected and not upon whether they were

10

admissible.  Indeed, testing revealed that Bernard's blood was present on both knives.  Id. at 606, 607, 610, 611.   As a result, we conclude that the trial court properly admitted the knives into evidence.

### III.  Prosecutorial Misconduct

Mateo next argues that the deputy prosecutor engaged in misconduct when he used the alleged perjured testimony from Bernard and Paul Melton at trial.  Specifically, Mateo argues that Melton continued to change his story about what had occurred and even admitted that he lied in his deposition.  Mateo then points out that Bernard also admitted that he lied in his deposition about what he saw and heard when Mateo arrived at the party.  Mateo also notes that the deputy prosecutor emphasized this false testimony during closing arguments.

In addressing this claim, we initially observe that to preserve a claim of prosecutorial misconduct, a defendant must not only object to the alleged misconduct but must also request an admonishment to the jury and move for a mistrial.  Cowan v. State, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003).   When the error is not preserved by a contemporaneous objection, as are the circumstances here, the defendant must not only establish the grounds for prosecutorial misconduct but also the grounds for fundamental error in order to succeed on his claim.  Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). Fundamental error is a "substantial, blatant violation of due process" that is so prejudicial to the rights of the defendant that a fair trial was impossible.  Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

11

We first note that Mateo did not object to the State's use of alleged perjured testimony in either instance, nor did he ask for an admonishment or a mistrial. Also, it was Mateo who relied on the perjured testimony—not the State. It was Mateo who confronted the witnesses with prior deposition testimony that both witnesses admitted was false. In short, the testimony that the State presented was true, and the State did not rely on perjured testimony in the presentation of its case. Rather, it was Mateo who relied on potentially perjured testimony to cast doubt on the credibility of the witnesses. In any event, two versions of sworn testimony were presented to the jury, and the jurors performed their function and determined the truth from the conflicting evidence.

Mateo faults the deputy prosecutor for failing to explain to the jurors why Melton was prohibited from testifying, even to the point of accusing the State of violating the Rules of Professional Conduct for not doing so. But the State elicited truthful testimony from Melton, and it was Mateo, who pointed out the perjured testimony from Melton's deposition. The point of doing so was to impair Melton's credibility in front of the jury. Of course, the State would have preferred to have presented evidence to explain why Melton lied during his deposition, but the trial court prevented it from doing so because of the witness's previous lies during the deposition. Tr. p. 681-88.

Mateo directs us to two separate points in Bernard's testimony that allegedly establish perjury. First, he points to Bernard's admission that he lied during his deposition because Mateo was "asking just crazy questions." Id. at 783. As noted above, the dishonest testimony was presented to the jury as impeachment evidence by Mateo and

12

not by the State. And Mateo was using it in an attempt to tarnish Bernard's credibility. Mateo also points to the following exchange between him and Bernard during cross-examination:

Q. And you told Detective Hillis an entirely different story about what happened didn't you?

A. Did I?

Q. Well . . . didn't you tell Detective Hillis that you and your brother were just walking down an alley and then out of nowhere two guys, two Hispanic guys you think, came out and tried to jump you for beer money? Isn't that what you told Detective Hillis?

A. No sir.

Tr. p. 790.

Mateo's questions apparently refer to Detective Hillis's narrative report. Appellant's App. p. 46. The narrative report does not say anything about Hispanic men. Id. Bernard answered Mateo truthfully that he had not told Detective Hillis that two Hispanic men jumped him for beer money. Rather, he said that "Shadow" and his friend did it. Bernard did ultimately admit that he had lied to Detective Hillis. Tr. p. 790-91, 795. However, lying to a police officer is not perjury and, in any event, the deputy prosecutor did not put his statement to Detective Hillis to any use at trial. Rather, it was Mateo who used the statement at trial.

In light of our discussion above, had Mateo not read portions of Melton and Bernard's depositions into the record, the jury would never have been exposed to any

13

possibly perjured testimony. It was in Mateo's interest to present the inconsistent testimony to the jury, and he did just that. He cannot now contend that he was prejudiced by his own strategic decisions and accuse the deputy prosecutor of misconduct. As a result, Mateo's claims of prosecutorial misconduct fail.

## IV. Instructions

Mateo next argues that his conviction must be reversed because the trial court erroneously instructed the jury on accomplice liability. Specifically, Mateo claims that the instructions were incorrect statements of law and that there was insufficient evidence in the record to support the giving of the instructions.

The trial court has broad discretion in the manner of instructing the jury, and we will review its decision only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). Jury instructions are to be considered as a whole and in reference to each other. Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). The ruling of the trial court will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. Kelly v. State, 813 N.E.2d 1179, 1185 (Ind. Ct. App. 2004).

Additionally, before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. Stringer, 853 N.E.2d at 548. When reviewing a challenge to a jury instruction, we will consider whether the instruction is a correct statement of law, whether there was evidence in the record to support giving the instruction, and whether the substance of the instruction is

14

covered by other instructions given by the court. Hubbard v. State, 742 N.E.2d 919, 921 (Ind. 2001). "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Snell, 866 N.E.2d at 396, (citing Ind. Code § 35-37-2-2(5)). And each party to an action is entitled to have the jury instructed on his particular theory of complaint or defense. Snell, 866 N.E.2d at 396.

Relevant here is our accomplice statute, Indiana Code section 35-41-2-4, which provides:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
>
>> (1) Has not been prosecuted for the offense;
>> (2) Has not been convicted of the offense; or
>> (3) Has been acquitted of the offense.

To sustain a conviction as an accomplice, there must be evidence of the defendant's conduct, either in the form of acts or words, from which an inference of a common design or purpose to effect the commission of a crime may be reasonably drawn. Buhrt v. State, 412 N.E.2d 70, 71 (Ind. 1980).

In this case, the trial court gave the following two instructions on accomplice liability:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.
>
> In order to commit an offense by aiding, inducing or causing another to commit the offense, a person must have knowledge that he is aiding,

15

inducing or causing the commission of the offense. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed.

Appellant's App. p. 26, 847-854, 860-861.

. . .

The jury may consider the defendant's relation to or companionship with the one engaged in the crime and the defendant's actions before, during, and after the crime in establishing accomplice liability.

Id. at 27.

In this case, Mateo argues that the above instructions impermissibly expanded the accomplice liability statute by allowing Mateo's mere presence at the scene to form the basis for accomplice liability without any showing that he was "engaged in some affirmative conduct in aiding or inducing the stabbing." Appellant's Br. p. 37.[2] At trial, Mateo argued:

Judge I don't think giving the Aiding, Inducing or Causing at this, this accomplice liability is even supported by the evidence. I know there's, I read the annotation just a short while ago, if you look under Annotation 10 of the Statute, his mere presence at the scene, the cases are, are consistent on this, is not enough and the failure to oppose a crime is not a basis either. We've . . . not heard any evidence, any agreement, the one's not directing the other, we've heard about Al, we haven't heard about Alberto really at all down there directing anything or same thing with Mr. Mateo. Every witness said they walked away. What's happened here with the evidence, each is just meeting their own attackers and just responding to that. I don't

---

[2] Although the State argues that Mateo has waived this issue because he has not included any of the final instructions in the record on appeal, the above instructions are part of the clerk's record. Appellant's App. p. 26-27. Also, there is adequate dialogue in the transcript showing that the two instructions were offered by the State and that the trial court accepted these instructions—which were originally labeled as preliminary instructions—as final instructions. Id. at 847-54, 860-61. Thus, we reject the State's claim that Mateo has waived the issue on this basis.

16

think it's enough here Judge just because they happen to be there that they're aiding each other in a, in some sort of a crime.

Tr. p. 878.

In response, the trial court commented that "two more Instructions down the road I have language the Defendant's presence during the commission of a crime or the failure to oppose the crime are by themselves insufficient to establish accomplice liability." Id. Mateo, however, has not included these additional instructions in the record. Thus, Mateo has failed to establish that the instructions that he complains of above were misstatements of the law or that these instructions "prejudiced his substantial rights." Stringer, 853 N.E.2d at 548. Put another way, in light of the fact that Mateo has failed to furnish these additional instructions, such that we cannot analyze whether instructions other than the ones that Mateo points to covered the deficiencies about which he complaints, he cannot successfully claim that the instructions set forth above were incorrect or incomplete statements of the law.

That said, there was more than adequate evidence presented at trial for the giving an accomplice liability instruction. Indeed, it was established that Mateo and Santos started a fight with some of the individuals at the party after Mateo slashed Isley's tires and taunted some of the partygoers. Tr. p. 658. Clarence and Santos squared off at the outset of the confrontation, and Bernard moved to intervene to protect Clarence, who was unarmed. Id. at 663, 750, 752-53. While Bernard and Santos were engaged in a fight

17

involving the knife and baseball bat, Mateo moved in against Clarence and stabbed him. Id. at 663, 754.

While all of the combatants ran away after Clarence had been stabbed, another confrontation ensued when Mateo and Santos realized that they were being pursued only by Bernard. They stopped and faced him together, and Santos stabbed Bernard. Tr. p. 756. Mateo joined in the attack and stabbed Bernard at least five more times. Id. at 757-58. This joint attack showed action that Santos and Mateo acted in concert, which justified the giving of an accomplice liability instruction.

Finally, although we cannot comment about the correctness of the specific instructions that were given because Mateo has not provided them all to us on appeal, it is clear that an accomplice liability instruction was appropriate in these circumstances. As a result, Mateo's claim fails.

## V. Sufficiency of the Evidence

Mateo argues that the evidence was insufficient to support his conviction for aggravated battery. Specifically, Mateo contends that the "surrounding circumstances of the stabbing negate Mateo's purported intent to create a substantial risk of death involving Bernard Brock" and that there was "insufficient evidence to show that Bernard's injuries created a substantial risk of death." Appellant's Br. p. 14.

In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). Additionally, we will consider only the evidence most

18

favorable to the verdict and all reasonable inferences therefrom. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We will affirm a defendant's convictions if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. Gray v. State, 871 N.E.2d 408, 416 (Ind. Ct. App. 2007). Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. McCray v. State, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006).

As discussed above, Bernard testified at trial that Mateo stabbed him in the right area of his chest, in the wrist, and three times in the back. Tr. p. 760. Bernard also testified that Mateo hit him on the head with a baseball bat. Id. Moreover, the uncontroverted evidence established that Bernard was alone and unarmed when Mateo inflicted these injuries. Id. at 755-58. The jury could infer the intentional nature of Mateo's attack from the fact that he inflicted multiple stab wounds, then switched weapons and hit Bernard on the head with a bat. See Evans v. State, 727 N.E.2d 1072, 1081-82 (Ind. 2000) (observing that the infliction of multiple stab wounds is sufficient to establish an intent to kill). Furthermore, Mateo used a deadly weapon in a manner that was likely to cause death or serious bodily injury. And Bernard's medical condition was sufficiently grave so as to necessitate his transfer to a Fort Wayne hospital via helicopter. Tr. p. 850.

In sum, the jurors were given the task of determining whether Bernard's wounds were life-threatening, and they concluded that they were. In light of the evidence

19

presented at trial, it was reasonable for the jury to conclude that the eight stab wounds that Bernard suffered were, in fact, life threatening. For all of these reasons, we conclude that the evidence was sufficient to support Mateo's conviction.

### VI. Evidence Disproving Self-defense

Mateo next argues that the State did not adequately rebut his claim of self-defense. Specifically, Mateo contends that he was in a place where he had the right to be when Bernard was stabbed and that he "was without fault as it related to the fight and consequent stabbing." Appellant's Br. p. 14.

We note that the standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Wilson v. State, 770 N.E.2d 799, 801 (Ind. 2002). Self-defense is governed by Indiana Code section 35-41-3-2, which provides that "a person is justified in using reasonable force against another person to protect the person . . . from what the person reasonably believes to be the imminent use of unlawful force." A valid claim of self-defense is a legal justification for an otherwise criminal act. Wilson, 770 N.E.2d at 800.

To prevail on a self-defense claim, a defendant must demonstrate that he: was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. Id. The amount of force that a person may use to protect himself or herself depends on the urgency of the situation. Harmon v. State, 849 N.E.2d 726, 730-31 (Ind. Ct. App. 2006). However, if an

20

individual uses "more force than is reasonably necessary under the circumstances," his self-defense claim will fail. Id. at 731. A mutual combatant, whether or not the initial aggressor, must communicate the desire to stop fighting, and the other individual must continue fighting before self-defense can be successfully claimed. See I.C. § 35-41-3-2(e)(3).

When a defendant claims self-defense, the State has the burden of disproving at least one of the elements of the defense beyond a reasonable doubt. Wilson, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. at 800-01.

In this case, Mateo's self-defense claim fails for two reasons. First, he provoked the attack when he slashed the tires and taunted the partygoers to come into the alley to fight. Second, Mateo, who was armed, could not have feared for his life such that he was justified in using deadly force when he and Santos were confronted with a lone unarmed juvenile. Finally, there is no evidence that Mateo never communicated his desire to withdraw from combat. For all of these reasons, we conclude that the State properly rebutted Mateo's claim of self-defense.

VII. Sentencing

Finally, Mateo argues that he was improperly sentenced. Mateo maintains that the trial court abused its discretion in sentencing him because it relied on several improper aggravating factors. More particularly, Mateo argues that the trial court should not have

considered all of Bernard's wounds as an aggravating factor because Santos also participated in the stabbing. Mateo also contends that the trial court should not have identified the fact that there were multiple victims as an aggravating factor, that it erred in considering Mateo's alleged propensity to reoffend as an aggravating circumstance, and that it should not have attributed so much weight to his criminal history when deciding what sentence to impose. Mateo also claims that his sentence is inappropriate when considering the nature of the offense and his character.

## A.  Abuse of Discretion

Sentencing decisions "rest with the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances of the case, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it fails "to enter a sentencing statement at all," enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or considers reasons that "are improper as a matter of law." Id. at 490-91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record."

22

Id. at 491. The relative weight or value assignable to reasons properly found, or those that should have been found, is not subject to review for abuse of discretion. Id.

### 1. Mateo's Responsibility for Wounds

As discussed above, it was proper for the trial court to instruct the jury on accomplice liability because the evidence demonstrated that Mateo and Santos acted in concert during the attacks. Consequently, after the jury had been instructed on accomplice liability and subsequently returned a guilty verdict for aggravated battery, the trial court was free to consider each of the wounds suffered by Bernard as the result of Mateo either by his own hand or by his association and collaboration with Santos. The resulting eight separate stab wounds and single blunt force injury to the head were valid considerations in determining what sentence to impose. Therefore, the trial court properly considered the total number of wounds that were inflicted on Bernard as an aggravating factor. See McCann v. State, 749 N.E.2d 1116, 1120 (Ind. 2001) (holding that the nature and circumstances of a crime can be a valid aggravating factor).

### 2. The Presence of Multiple Victims

Contrary to Mateo's assertion, the trial court does not appear to have considered the number of victims involved as an aggravating factor. At the sentencing hearing, the trial court stated, "I don't know that I'm actually, I'm considering the fact that there were multiple victims. Clarence Brock also but I don't know that I'm going to consider that as an aggravating circumstance." Tr. p. 943.

23

Notwithstanding this statement, there were two victims who suffered from the actions of Mateo and Santos, who were acting in concert. And the number of victims can be considered an aggravating circumstance. See O'Connell v. State, 742 N.E.2d 943, 952 (Ind. 2001) (noting the well-established principle that multiple crimes or victims constitute a valid aggravating circumstance that may justify consecutive sentences). Moreover, a trial court can consider uncharged conduct in sentencing a defendant. See Singer v. State, 674 N.E.2d 11, 14 (Ind. Ct. App. 1996) (holding that "[u]ncharged misconduct is a valid sentence aggravator"). Thus, even if the trial court had considered the presence of multiple victims as an aggravating factor, Mateo's argument fails.

### 3. High Risk to Reoffend

In essence, any circumstance that bears on the nature of the offense or the character of the offender may be used in determining an appropriate sentence. Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). Statements regarding a defendant's risk to reoffend or failure to rehabilitate are "'derivative'" of criminal history, [and] are legitimate observations about the weight to be given to facts appropriately noted by a judge" in sentencing. Morgan v. State, 829 N.E.2d 12, 17 (Ind. 2005).

Additionally, our Supreme Court has held that a trial court's use of the Level of Service Inventory—Revised (LSIR) score, which is an assessment of a defendant's risk of recidivism, is a valid consideration in sentencing. Malenchik v. State, 928 N.E.2d 564, 575 (Ind. 2010). As our Supreme Court observed in Cardwell, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the

24

defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. In our view, the likelihood that a defendant will commit further offenses once released is a crucial factor in determining whether a sentencing court should be lenient with a defendant and whether to offer him probation, an alternate placement, or a fully executed sentence. As a result, the trial court properly considered Mateo's high risk to offend as an aggravating factor.

### 4. Weight of Criminal History

Finally, Mateo next asserts that the trial court assigned too much weight to his criminal history in deciding what sentence to impose. Appellant's Br. p. 40. However, our Supreme Court has held that such claims are not reviewable on appeal. Anglemyer, 868 N.E.2d at 491.

### B. Inappropriate Sentence

Mateo also contends that his sentence is inappropriate when considering the nature of the offense and his character. Specifically, Mateo contends that he should have received a lesser sentence because he was not the initial aggressor and because his criminal history consisted of a "small number of misdemeanor convictions" and a "few probation violations." Appellant's Br. p. 43.

Pursuant to Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question is not whether another sentence is more

25

appropriate, but whether the sentence imposed is inappropriate. King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant carries the burden of persuading this court that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). The defendant must show that his sentence is inappropriate in light of both his character and the nature of the offense. Williams v. State, 891 N.E.2d 621, 633 (Ind. 2006).

As for the nature of the offense, the evidence shows that Mateo and Santos stabbed a lone unarmed juvenile eight times causing him to be flown to Fort Wayne via helicopter in order to save his life. Tr. p. 756, 771, 848. Bernard did not instigate this confrontation—Mateo did. The evidence shows that Mateo taunted the partygoers and provoked them to fight in the alley where he and Santos waited in ambush, armed with knives. Id. at 657-58, 749. In short, Mateo's nature of the offense argument avails him of nothing.

As for Mateo's character, the record shows that Mateo has committed numerous criminal offenses and disobeyed the terms of many suspended sentences and lenient sanctions in the four years since he turned eighteen. For instance, in the four years after becoming an adult, Mateo had accumulated convictions for operating a motor vehicle while never licensed, illegal consumption of alcohol, public intoxication, and possession of marijuana. PSI p. 3-4. Mateo had been placed on probation twice and failed to successfully complete either term of probation. Also, at the time of sentencing, Mateo had four pending misdemeanor charges for criminal trespass, criminal mischief, public

26

intoxication, and illegal consumption of alcohol. Id. at 4. Mateo also admitted that he smokes marijuana on a daily basis, and he has failed at least two drug screens. Id. at 8. He has also been a member of a criminal street gang for several years. Tr. p. 682.

In light of this evidence, it is apparent that prior attempts of probation, parole, and incarceration have not rehabilitated Mateo. Along with his frequent contacts with the criminal justice system, Mateo's admitted illegal drug use demonstrates that he is not living a law-abiding life. A record of repeated rehabilitation failures indicates that Mateo has no respect for the law and for the opportunities afforded him, has no desire to conform his conduct to that of a law-abiding citizen, and continues to reoffend.

As a result, Mateo has failed to show that his sentence is inappropriate when considering the nature of the offense and his character.

CONCLUSION

In light of our discussion above, we conclude that the trial court did not err in excluding evidence of gang activity, and that the trial court properly admitted the knives into evidence. We also find that Mateo does not prevail on his claims of prosecutorial misconduct and that Mateo has waived, in part, his contention that the jury was improperly instructed. Finally, we conclude that the evidence was sufficient to support his conviction and that Mateo was properly sentenced.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.

27