## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fatima Mays,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 12, 2015

Court of Appeals Case No.
49A04-1407-CR-310

Appeal from the Marion Superior Court
The Honorable Barbara Cook Crawford, Judge
The Honorable Shatrese Flowers, Commissioner
Case No. 49F09-1305-FD-30328

**Bradford, Judge.**

# Case Summary

[1] On March 29, 2013, Appellant-Defendant Fatima Mays engaged in a confrontation with Danella Winfield when she attempted to pick her nephew

up from Winfield's home. During this confrontation, Mays pointed a gun at Winfield. Mays was subsequently charged with and convicted of Class D felony pointing a firearm.

[2] In challenging her conviction on appeal, Mays contends that Appellee-Plaintiff the State of Indiana (the "State") failed to provide sufficient evidence to rebut her assertion that she acted in self-defense. Mays also contends that the trial court abused its discretion in sentencing her. We affirm.

## Facts and Procedural History

[3] The facts most favorable to the trial court's judgment are as follows: On March 29, 2013, Winfield was caring for her grandsons G.S. and A.S. (collectively, "the boys"), at her home in Marion County. At approximately noon, Mays arrived at Winfield's home to pick up her nephew, G.S.[1] At some point earlier that day, Mays had been told that she could not pick up one of the boys without taking both of the boys.

[4] Upon arriving at Winfield's home, Mays started "beatin'" on the front door. Tr. p. 19. Before Winfield could answer the door, Mays, who was upset that Winfield had said she could not take G.S. unless she also took A.S., walked around to the back of Winfield's home. Winfield and the boys met Mays at the

---

[1] The record demonstrates that G.S. is Mays's nephew, A.S. is not.

back door.  Mays was "outraged" and "cussin'." Tr. p. 20.  In an attempt to get Mays to lower her voice, Winfield "started cussin' at her back." Tr. p. 20.

[5] Eventually, Mays, Winfield, and the boys walked around to the front of Winfield's house and approached Mays's vehicle.  Upon reaching the vehicle, Mays, who was still enraged, sat down in the driver's seat.  In a continued attempt to calm Mays down, Winfield, who was standing between the open door and the driver's seat, lightly placed her hands on Mays's shoulders and told her that she needed to leave.  A.S. was standing on Winfield's right side and G.S. was standing on Winfield's left side.

[6] Mays leaned over and, upon sitting back up, was holding a gun—a black Ruger 9 mm—in her right hand.  Mays pointed the gun directly at Winfield and said, "I will kill you ole bitch.  Get up off of me." Tr. p. 23.  Mays continued to point the gun at Winfield as she started kicking her.  Mays told G.S. to "[s]tand back.  I'm going to run this ole bitch over." Tr. p. 26.  Mays then put her vehicle in reverse as A.S. and G.S. pulled Winfield out of the way of the vehicle.

[7] On May 23, 2013, the State charged Mays with Class D felony pointing a firearm and Class A misdemeanor battery.  On March 5, 2014, the trial court conducted a bench trial.  The trial resumed on April 16, 2014.  During trial, Mays argued that her act of pointing the gun at Winfield was justified because she was acting in self-defense.  At the conclusion of trial, the trial court found Mays guilty of Class D felony pointing a firearm and not guilty of Class A

misdemeanor battery.  On June 11, 2014, the trial court sentenced Mays to a term of 545 days, with 180 days executed on home detention and the remaining 365 days suspended to probation.

# Discussion and Decision

## I. Whether the State Sufficiently Rebutted Mays's Self-Defense Claim

[8] Mays argued at trial that she was justified in pointing a gun at Winfield because she was acting in self-defense.  On appeal, Mays contends that the State failed to sufficiently rebut her self-defense claim.

> We note that the standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim.  *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002).  Self-defense is governed by Indiana Code section 35-41-3-2, which provides that "a person is justified in using reasonable force against another person to protect the person ... from what the person reasonably believes to be the imminent use of unlawful force."  A valid claim of self-defense is a legal justification for an otherwise criminal act.  *Wilson*, 770 N.E.2d at 800.

> To prevail on a self-defense claim, a defendant must demonstrate that he: was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm.  *Id*.  The amount of force that a person may use to protect himself or herself depends on the urgency of the situation. *Harmon v. State*, 849 N.E.2d 726, 730-31 (Ind. Ct. App. 2006). However, if an individual uses "more force than is reasonably necessary under the circumstances," his self-defense claim will fail.  *Id*. at 731.  A mutual combatant, whether or not the initial aggressor, must communicate the desire to stop fighting, and the other individual must continue fighting before self-defense can be successfully claimed. *See* [Indiana Code] § 35-41-3-2(e)(3).

> When a defendant claims self-defense, the State has the burden of disproving at least one of the elements of the defense beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id*. at 800-01.

*Mateo v. State*, 981 N.E.2d 59, 72 (Ind. Ct. App. 2012). Further, in reviewing the defendant's claim, "[w]e neither reweigh the evidence nor assess the credibility of witnesses but look solely to the evidence most favorable to the judgment will all reasonable inferences to be drawn therefrom." *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999) (citations omitted).

[9] The version of Indiana Code section 35-47-4-3(b) in effect on the date in question provided that "[a] person who knowingly or intentionally points a firearm at another person commits a Class D felony." In alleging that Mays committed Class D felony pointing a firearm, the State alleged that Mays "did knowingly point a firearm, to wit: <u>a Ruger 9mm black semi-automatic pistol</u>, at [<u>Winfield</u>]." Appellant's App. p. 17 (underlining in original). Mays does not challenge the sufficiency of the evidence to prove that she pointed a firearm at Winfield. Instead, Mays argues that she was justified in doing so because she acted in self-defense and that the State failed to present sufficient evidence to rebut her self-defense claim. We disagree.

[10] In this case, the State presented sufficient evidence to rebut Mays's self-defense claim. The evidence most favorable to the trial court's judgment indicates that Mays instigated the confrontation with Winfield. Further, even if Winfield instigated the confrontation, Mays can reasonably be considered a mutual

combatant, and the evidence most favorable to the trial court's judgment does not indicate that Mays communicated a desire to withdraw from combat but rather continued on in a combative state. In addition, the evidence indicates that Mays used more force than was reasonably necessary under the circumstances when she pulled a gun, pointed the gun at Winfield, and threatened to kill Winfield.

[11] In arguing that the State failed to provide sufficient evidence to rebut her self-defense claim, Mays relies on her own testimony regarding the events in question. The trial court, however, was not obligated to believe Mays's self-serving testimony. *See McCullough v. State*, 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013) (providing that the trier of fact was under no obligation to credit defendant's version of the events in question as evidence that he acted without fault or that his actions were reasonable). Mays's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence and reassess witness credibility, which we will not do. *See Miller*, 720 N.E.2d at 699.

[12] For all of these reasons, we conclude that the State properly rebutted Mays's claim of self-defense.[2]

---

[2] Furthermore, we disagree with Mays's assertion that the State should not have been permitted to rely on its case-in-chief to rebut her self-defense claim but rather should have been required to present rebuttal evidence and note that relevant authority provides otherwise. *See Wilcher v. State*, 771 N.E.2d 113, 116 (Ind. Ct. App. 2002) (citing *Mariscal v. State*, 687 N.E.2d 378, 381 (Ind. Ct. App. 1997), *trans. denied*) (providing that the State may rebut a claim of self-defense by affirmatively showing that the defendant did not act to defend himself or another by relying on the evidence elicited in the case-in-chief).

## II. Whether the Trial Court Abused Its Discretion in Sentencing Mays

[13]     Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence- including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490-91. A single aggravating factor may support an enhanced sentence. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993).

[14]     Mays claims that the trial court abused its discretion in imposing an enhanced sentence because the trial court erroneously found her employment and school enrollment status to be aggravating during sentencing. Initially, we note that the trial court imposed a 545 day sentence which is less than the one-and-one-

half-year advisory sentence for a Class D felony conviction.[3] As such, the trial court did not impose an enhanced sentence.

[15] In addition, we need not consider whether the trial court erred in finding Mays's employment and school enrollment status to be aggravating because the trial court found two other aggravating factors at sentencing, *i.e.*, the nature and circumstances of the crime and Mays's lack of remorse, and Mays does not challenge either of these factors on appeal. The record demonstrates that Mays pointed a gun directly at Winfield in the immediate presence of two children, A.S. and G.S. Mays also threatened to kill Winfield, kicked Winfield, and seemingly attempted to run over Winfield with her vehicle. In light of these facts, we can say with confidence that the trial court would have imposed the same sentence—545 days with 180 days executed on home detention and 365 days suspended to probation—had the trial court properly considered only reasons that enjoy support in the record. *See Anglemyer*, 868 N.E.2d at 491.

[16] Furthermore, to the extent that Mays also claims that the trial court abused its discretion in applying weight to the aggravating and mitigating factors, we observe that the Indiana Supreme Court has long held that a trial court is not required to weigh or credit aggravating and mitigating factors the way an

---

[3] We note that Indiana's sentencing structure for felony convictions was amended effective July 1, 2014. However, the sentencing structure that was effective on the date Mays committed her criminal offense applies in the instant matter. *See Bell v. State*, 654 N.E.2d 856, 858 (Ind. Ct. App. 1995) (providing that "[g]enerally, the statute to be applied when arriving at the proper criminal penalty should be the one in effect at the time the crime was committed.").

appellant suggests it should be weighed or credited. *Fugate*, 608 N.E.2d at 1374. Further, because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Anglemyer*, 868 N.E.2d at 491. As such, the trial court did not abuse its discretion in this regard.

# Conclusion

[17] In sum, we conclude that the State presented sufficient evidence to rebut Mays's self-defense claim. We also conclude that the trial court acted within its discretion in sentencing Mays. Accordingly, we affirm the judgment of the trial court.

[18] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.