## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Demetrius Tate,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 10, 2017

Court of Appeals Case No.
79A02-1612-CR-2909

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-1606-F5-86

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Demetrius Tate (Tate), appeals his sentence following an open guilty plea to operating a motor vehicle while privileges are forfeited for life, a Level 5 felony, Ind. Code § 9-30-10-17.

We affirm.

# ISSUES

Tate presents us with two issues on appeal, which we restate as:

(1) Whether the trial court abused its sentencing discretion by improperly considering the probation department's risk assessment score as an aggravating circumstance; and

(2) Whether Tate's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On June 15, 2016, the State filed an Information, charging Tate with operating a motor vehicle while privileges are forfeited for life, a Level 5 felony. On September 30, 2016, Tate pled guilty without the benefit of a plea agreement. Thereafter, on November 17, 2016, the trial court conducted a sentencing hearing. During the hearing, the trial court reviewed the presentence report and heard testimony. The trial court took note of Tate's extensive criminal history and expressed its concern with "the repetitive nature of [his] criminal conduct[,] [he] seem[s] to just keep getting into trouble after [sic] one thing after another."

(Transcript p. 35). The trial court found as aggravators Tate's criminal history, his probation violations, his history of failing to appear, and the instant offense was committed while out on bond for another offense. While describing the aggravators, the trial court also stated—without expressly referring to it as an aggravator—"[m]ost importantly, the probation department finds that you are very high risk to re-offend based upon . . . your criminal history and based upon your ability not to follow probation rules and community corrections and the like." (Tr. p. 36). The trial court considered Tate's guilty plea to be a mitigating circumstance. As the aggravators outweighed the mitigator, the trial court imposed a four-year sentence, with three years executed and one year of supervised probation.

[5] Tate now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Aggravating Circumstance*

[6] Tate contends that the trial court improperly sentenced him. Sentencing decisions rest within the sound decision of the trial court and we review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probably, and actual deductions drawn therefrom. *Id*. We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the

relative weight assigned to those factors. *Id.* at 490-91. When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only if "the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record, and advanced for consideration, or the reasons given are improper as a matter of law." *Id.*

[7] Tate contends that the trial court erred when it improperly considered the probation department's risk assessment score as an aggravating circumstance. During the sentencing hearing, the trial court found as follows:

> So, your criminal history – your significant criminal history is an aggravator. You violated probation at least three (3) times and you have a history of being rejected from community corrections. You also have a history of failing to appear and those are aggravators. Another aggravator is that this offense was committed while you were out on bond on another offense. When you are out on bond on another offense you are supposed to promise to maintain good and lawful behavior and not go out and commit any other offenses, yet you were driving when you knew you were not supposed to drive and you didn't have a valid license. So, that puts you in jeopardy of not maintaining lawful conduct while this – while another case was pending; that's an aggravator. Most importantly, the probation department finds that you are very high risk to re-offend based upon []. The probation department has found that you are very high risk to re-offend based upon your criminal history and based upon your ability not to follow probation rules and community corrections and the like.

(Tr. pp. 35-36).  In its written sentencing order, the trial court enumerated as aggravating factors:  "[Tate's] criminal history, he violated bond on another case; he has had past Petitions to Revoke Probation filed and Failures to Appear; he has been rejected by Community Corrections, and he is at a high risk to reoffend."  (Appellant's App. Vol. II, p. 21).

[8]  In *Malenchik v. State*, 938 N.E.2d 564, 575 (Ind. 2010), our supreme court concluded that "the nature of risk assessment tools is not to function as a basis for finding aggravating circumstances[;]" however,

> they can be significant sources of valuable information of judicial consideration in deciding whether to suspend all or part of a sentence, how to design a probation program for the offender, whether to assign an offender to alternative treatment facilities or programs, and such other corollary sentencing matters.  The scores do not in themselves constitute an aggravating or mitigating circumstance because neither the data selection and evaluations upon which a probation officer or other administrator's assessment is made nor the resulting scores are necessarily congruent with a sentence judge's findings and conclusion regarding relevant sentencing factors.

*Id*. at 572, 573.  The *Malenchik* court reasoned that

> [h]aving been determined to be statistically valid, reliable, and effective in forecasting recidivism, the assessment tool scores may, and if possible should, be considered to supplement and enhance a judge's evaluation, weighing, and application of other sentencing evidence in the formulation of an individualized sentencing program appropriate for each defendant.

> * * * *

[A]ssessment instruments enable a sentencing judge to more effectively evaluate and weigh several express statutory sentencing considerations such as criminal history, the likelihood of affirmative response to probation or short term imprisonment, and the character and attitudes indicating that a defendant is unlikely to commit another crime. Furthermore, even apart from these statutory criteria, which do not limit the matters that the court may consider in determining the sentence, the offender's scores and/or narrative results may be considered by a trial judge in reaching an informed sentencing decision.

*Id.* at 573, 574 (internal references omitted).

[9] During the sentencing hearing, the trial court explicitly designated four aggravators: Tate's criminal history, his failures to appear, his probation violations, and committing a crime while out on bond. While not expressly categorized as an aggravator, the trial court found it "important[]" that the probation department assessed Tate to be at a high risk to re-offend. (Tr. p. 36). In its written sentencing statement, the trial court lists Tate's "very high risk to re-offend" as an aggravator but did not reference the probation's department formal assessment directly. (Appellant's App. Vol. II, p. 21).

[10] The determination that Tate was a high risk at re-offending is part and parcel to sentencing decisions. "Statements regarding a defendant's risk to reoffend or failure to rehabilitate are 'derivative of criminal history, [and] are legitimate observations about the weight to be given to facts appropriately noted by a judge in sentencing." *Mateo v. State*, 981 N.E.2d 59, 74 (Ind. Ct. App. 2012), (citing *Morgan v. State*, 829 N.E.2d 12, 17 (Ind. 2005)), *trans. denied*. "The

likelihood that a defendant will commit further offenses once released is a crucial factor in determining whether a sentencing court should be lenient with defendant and whether to offer him probation, an alternate placement, or a fully executed sentence." *Mateo*, 981 N.E.2d at 74.

[11]  We agree with the State that by not expressly defining the probation department's risk assessment as an aggravator, the trial court used the assessment as directed by our supreme court, *i.e.*, as a supplement to both the discretionary determination that Tate was at a high risk to re-offend and the broader determination of his overall sentence. After discussing Tate's significant and lengthy criminal history, his failures to appear, his probation violations, and his violation of bond conditions, the trial court's logical conclusion amounted to a finding that Tate was at risk to re-offend. By using the phrasing "most importantly," the trial court merely enforced the value of its explicit aggravators with a conclusion also reached by the probation department in its risk assessment. (Tr. p. 36). In other words, the trial court independently determined Tate's high risk to re-offend, which it then evaluated and supported by reference to the probation department's risk assessment.

[12]  However, even if the trial court improperly considered the probation department risk assessment determination as a separate aggravator, we can say with confidence that, had the trial court considered only the proper aggravators, it would have imposed the same sentence. A "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence" had it considered the proper

aggravating circumstances. *Anglemyer*, 868 N.E.2d at 491. Besides the high risk to re-offend, the trial court found four other aggravators which are not disputed by Tate. "A single aggravating circumstance may be sufficient to enhance a sentence." *Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999). On the other hand, the trial court found a single mitigating factor: Tate's guilty plea. After weighing the aggravators and mitigator, the trial court sentenced Tate to a four-year aggravated sentence, which is one year more than the advisory sentence of a Level 5 felony. *See* I.C. § 35-50-2-6. Disregarding Tate's risk to re-offend, still leaves four valid aggravators to be weighed against one mitigator. Accordingly, we conclude that the trial court did not abuse its discretion when it sentenced Tate.

## II. *Appropriate Sentence*

[13]     Pursuant to Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The principal role of appellate review is to "leaven the outliers;" it is "not to achieve a perceived correct result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The appropriateness of the sentence turns on this court's "sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad other factors that come to light in a given case."

*Id.* at 1224. The defendant carries the burden of persuading this court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The defendant must show that his sentence is inappropriate in light of both his character and the nature of the offense. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. 2006).

[14] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for a Level 5 felony is between one and six years, with the advisory sentence being three years. *See* I.C. § 35-50-2-6. Here, the trial court sentenced Tate to a four-year sentence with one year suspended. Tate's sentence is not inappropriate in light of the nature of the offense. Tate pled guilty to operating a vehicle after his driving privileges were forfeited for life pursuant to a prior conviction. While there is nothing unique about his charge, Tate, however, fails to persuade us that the nature of his offense warrants a reduction of his sentence.

[15] Turning to Tate's character, we echo the trial court that Tate "just keep[s] getting into trouble[.]" (Tr. p. 35). Tate's criminal history commenced in 2002, and throughout the years he has amassed four prior felony convictions for Class D felony theft, Class D felony possession of marijuana, and Class D felony operating a vehicle after being adjudged a habitual traffic offender. Thirty-two-year-old Tate has been found a habitual substance offender twice and has eleven misdemeanor convictions, two of which occurred after the commission of the instant offense. In the past, Tate has received the benefit of short

sentences, suspended sentences, longer jail sentences, unsupervised probation, supervised probation, home detention, work release, community service, and substance abuse treatment all to no avail. His criminal record establishes twelve failures to appear, violations of home detention and work release conditions, probation revocations, and the violation of bond conditions. Tate also started abusing alcohol when he was thirteen years old, and turned to using marijuana every day beginning in his early twenties until 2009. Thereafter, he used marijuana, synthetic marijuana, and ecstasy on occasion.

[16] Clearly, lenient punishment has been wasted on Tate and there is no indication that a more lenient sentence now will encourage him to rehabilitate. While Tate testified to having bettered himself in the two weeks prior to the sentencing hearing, the evidence of this short-term good behavior cannot outweigh his long history of repetitive, criminal behavior. We agree with the State that "[s]hould Tate earnestly seek to reform his ways, he has opportunity to demonstrate as much throughout his incarceration, [and] during his subsequent probation period[.]" (Appellee's Br. pp. 18-19). Accordingly, we conclude that Tate failed to establish that the nature of the crime and his character provide a reason to revise his sentence.

## CONCLUSION

[17] Based on the foregoing, we conclude that the trial court properly sentenced Tate.

[18] Affirmed.

[19] Najam, J. and Bradford, J. concur