## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane Ann Noblitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Debin Paige Gabbard, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 21, 2018 <br><br> Court of Appeals Cause No. 18A-CR-1618 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Judge <br><br> Trial Court Cause No. 03D01-1710-F2-5616 & 03D01-1802-F5-733 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Debin Gabbard (Gabbard), appeals her sentence following her guilty plea to dealing in methamphetamine, a Level 3 felony, Ind. Code §§ 35-48-4-1.1(a)(2), (d)(2); and dealing in methamphetamine, a Level 5 felony, I.C. § 35-48-4-1.1(a)(1).

We affirm.

# ISSUES

Gabbard presents two issues on appeal, which we restate as:

> (1) Whether the trial court abused its discretion when it sentenced Gabbard; and

> (2) Whether Gabbard's sentence is inappropriate in light of the nature of her offenses and her character.

# FACTS AND PROCEDURAL HISTORY

In the fall of 2017, law enforcement made two controlled buys of heroin from Gabbard and her boyfriend at their home in Columbus, Indiana. The buys were made with different confidential informants, both of whom had contacted the authorities with the information that it was possible to purchase heroin from Gabbard and her boyfriend. On October 4, 2017, based on the controlled buys, officers obtained and executed a search warrant on Gabbard's home. Gabbard,

who was able to see officers approaching her home to execute the search warrant, secreted quantities of methamphetamine and heroin inside her vagina. When Officers searched Gabbard's home approximately twenty-eight grams of methamphetamine, a handgun, a scale, and plastic sandwich bags commonly used to package drugs were found.

[5] Gabbard was arrested on multiple charges and was taken into custody. While being held at the Bartholomew County Jail, Gabbard removed the methamphetamine and heroin from her vagina and provided the methamphetamine to fellow inmate Mary Snyder (Snyder) in exchange for credits at the jail commissary. Snyder, in turn, placed the methamphetamine in a bottle of hair conditioner which was later retrieved by inmate Angela Blair (Blair). Blair died in jail during the evening of October 7, 2017, of methamphetamine intoxication.

[6] On October 11, 2017, the State filed an Information in Cause Number 03D01-1710-F2-5616 (Cause -5616), charging Gabbard with dealing in methamphetamine, as a Level 2 felony; possession of methamphetamine, as a Level 3 felony; and two Counts of dealing in a narcotic drug, both as Level 5 felonies for the drugs found in her home. On February 8, 2018, the State filed an Information in Cause Number 03D01-1802-F5-733 (Cause -733), charging Gabbard with dealing in methamphetamine, a Level 5 felony; trafficking with an inmate in a controlled substance, a Level 5 felony; possession of a narcotic drug, a Level 6 felony; and possession of methamphetamine, a Level 6 felony,

for the offenses she committed while being held in jail on the Cause -5616 charges.

[7] On May 14, 2018, Gabbard pleaded guilty to dealing in methamphetamine as a Level 3 felony in Cause -5616. Gabbard also pleaded guilty to dealing in methamphetamine as a Level 5 felony in Cause -733. Pursuant to an agreement with the State, all other charges were dismissed.

[8] On June 1, 2018, the State filed its pre-sentence investigation report (PSI) which revealed that Gabbard had two juvenile adjudications, one in 2003 for alcohol possession and one in 2007 for battery. She received probation for each of those adjudications. As an adult, Gabbard had a 2010 conviction for illegal alcohol possession for which she received probation. In 2015, Gabbard pleaded guilty to Class D felony possession of a controlled substance. She received a one-year sentence which was suspended to time-served and probation. Less than four months later, the State filed a petition to revoke Gabbard's probation based upon her testing positive for methamphetamine and heroin. The trial court revoked Gabbard's probation, and she served 175 days in jail. While she was being held on the instant cases, the State filed an Information, charging Gabbard with conversion.

[9] Gabbard reported to her PSI investigator that she and her boyfriend used some of the money they earned dealing drugs to support themselves. Gabbard reported doing cleaning work in addition to dealing drugs. Gabbard had no other verifiable employment for the previous two years. She also reported that

Snyder gave the methamphetamine to Blair and that it was "Mary's fault" that Blair died. (Confidential App. Vol. III, p.7). Gabbard felt that "Mary killed her because she gave it to her." (Conf. App. Vol. III, p. 7). Gabbard had lost contact with her adoptive mother because of her drug use.

[10] Gabbard reportedly began abusing heroin and methamphetamine at the age of twenty-three, which she attributed to hanging around with the wrong crowd. Gabbard started by snorting and smoking drugs, but later she began injecting them. Gabbard sought treatment at the Indiana Treatment Center on one occasion. She was prescribed methadone but ceased attending treatment after approximately four weeks. Gabbard was attending Celebrate Recovery pending resolution of her cases.

[11] On June 12, 2018, the trial court held Gabbard's sentencing hearing. Gabbard was twenty-eight years old at the time of her sentencing. Gabbard maintained repeatedly at her sentencing hearing that she had never sold any drugs. Rather, she claimed that she gave drugs away to her friends without accepting payment in order to support her drug habit. Gabbard testified that hiding the drugs in her vagina was not planned and that it "just happened." (Transcript Vol. II, p. 24). Gabbard further testified that she brought the drugs into jail to avoid withdrawal symptoms, but she also maintained that she never used any of the drugs for that purpose. Gabbard stated that she felt responsible for Blair's death even though she did not directly hand Blair the methamphetamine and that "if I had never brung [sic] that it [sic] she would still probably be here." (Tr. Vol. II, p. 25).

[12] Gabbard's counsel argued that Gabbard's lack of criminal record and her need for treatment merited a reduced sentence. He also argued that Gabbard "does feel responsible for [Blair's] passing, because clearly if she hadn't brought the stuff in, [Snyder] wouldn't have taken it." (Tr. Vol. II, p. 38). The trial court found Gabbard's statement that she was only dealing to support her habit to lack credibility, which the trial court believed indicated that Gabbard did not take responsibility for her actions.

[13] In its written sentencing order, the trial court found, in relevant part, as follows:

> The Court finds no mitigating circumstances. The Court finds the following aggravating circumstances in cause number 03DO1-1802-F5-733 and O3DOl-l71O-F2-5616:
>
> 1. The defendant has a history of criminal or delinquent behavior.
>
> 2. The defendant has been on probation in the past and has been revoked.
>
> 3. The defendant has had opportunity for treatment outside of a penal facility and has been unsuccessful.
>
> The Court finds the following aggravating circumstance in only cause number 03DO1-1802-F5-733:
>
> 4. A person died "in part" as a result of defendant's actions.

(Appellant's App. Vol. II, p. 56). The trial court sentenced Gabbard to fifteen years with the Indiana Department of Correction for the Level 3 felony dealing offense and to six years for the Level 5 felony offense, to be served consecutively, for an aggregate sentence of twenty-one years.

Gabbard now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Abuse of Discretion*

Gabbard contends that the trial court abused its discretion when it found as an aggravating circumstance that Blair died in part because of Gabbard's actions. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

Gabbard acknowledges on appeal that her sentence is within the statutory guidelines for the offenses. However, Gabbard argues that the trial court abused its discretion because she did not plead guilty to causing Blair's death and no evidence in the record established a direct line of culpability to her for Blair's death. We begin by noting that the trial court found the challenged aggravating circumstance only as to the jailhouse dealing in methamphetamine

conviction in Cause -733. Therefore, we conclude that Gabbard raises no abuse of discretion claim pertaining to her sentence for her other dealing conviction in Cause -5616.

[17] The gravamen of Gabbard's argument is that the challenged aggravating circumstance was not supported by the record. However, there was evidence before the trial court that Gabbard admitted giving the methamphetamine to Snyder and that Gabbard reported that Snyder hid it in a conditioner bottle. Video surveillance footage from the jail substantiated Gabbard's account and showed Snyder placing a conditioner bottle on the floor of her cell and Blair later picking up the same bottle and taking it with her to her bed. Blair died the next day of methamphetamine intoxication. Gabbard acknowledged at her sentencing hearing that she felt responsible for Blair's death and that if she had not brought the methamphetamine into the jail, Blair would still be alive. Gabbard's counsel also argued at sentencing that Gabbard felt responsible for her part in causing Blair's death. Given this evidence and argument, we cannot say that the trial court's aggravating circumstance was unsupported by the record or that it was clearly against the logic and effect of the facts and circumstances before the court. *Anglemyer v. State*, 868 N.E.2d at 490-91.

[18] However, even if the trial court had abused its discretion when it found as an aggravating circumstance that Gabbard was at least in part responsible for Blair's death, we would still affirm the trial court's sentence. The finding of even one valid aggravating circumstance is sufficient to impose both an aggravated sentence and consecutive sentences. *Gleason v. State*, 965 N.E.2d

702, 712 (Ind. Ct. App. 2012). Here, the trial court found three other aggravating circumstances applicable to Gabbard's conviction for the jailhouse dealing offense, namely her criminal record, the fact that Gabbard had her probation revoked in the past, and that she had the opportunity for treatment outside of a penal facility but had been unsuccessful. Gabbard does not challenge the validity of these additional aggravating circumstances, and, therefore, we conclude that her argument fails for the additional reason that those aggravating circumstances justified the sentence imposed by the trial court.

## II. *Appropriateness of Sentence*

[19]     Gabbard also contends that her sentence is inappropriate given the nature of her offenses and her character. The Indiana Constitution and Indiana Appellate Rule 7(B) permit an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018). "The principal role of such review is to attempt to leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson*, 91 N.E.3d at 577.

[20]     Gabbard pleaded guilty to Level 3 and Level 5 felony dealing in methamphetamine. The sentencing range for a Level 3 felony is from three to sixteen years, with nine years being the advisory sentence. I.C. § 35-50-2-5(b).

The sentencing range for a Level 5 felony is from one to six years, with three years being the advisory sentence. I.C. § 35-50-2-6(b). Here, the trial court imposed a fifteen-year sentence for the Level 3 felony conviction and a six-year sentence for the Level 5 felony conviction, to be served consecutively. Thus, the trial court's sentence represents the near-maximum permitted for the offenses.

[21] Gabbard has little to argue regarding the nature of her offenses apart from her contention that her "intentions in the actions she took were to support her own habit, not to profit financially." (Appellant's Br. p. 15). However, this contention is belied by evidence in the record that she accepted money from the confidential informants during the controlled buys and that she and her boyfriend used some of the profits from their drug dealing to support themselves. In addition, Gabbard brought drugs into the jail and continued to deal drugs even as she was being held on drug dealing charges. As a result of her drug dealing in jail, Blair died of methamphetamine intoxication. In light of these circumstances, we conclude that Gabbard has not met her burden to persuade us that her sentence is inappropriate given the nature of her offenses. *Robinson*, 91 N.E.3d at 577.

[22] As to her character, we note that Gabbard had two contacts with the juvenile justice system and one previous felony conviction for a drug offense as an adult. Gabbard has received the benefit of suspended sentences, probation, and an executed sentence after her probation revoked on one occasion for testing positive for drug use. Gabbard also had a conversion charge pending at the

time of sentencing. Although Gabbard's criminal history is not the most severe we have encountered, we do not conclude that it renders her sentence inappropriate.

[23] In addition, despite the negative impact it has had on her life, Gabbard has failed to address her drug addiction, which has escalated from snorting and smoking to intravenous use. There is no evidence in the record that Gabbard has sought assistance for her drug use apart from one failed attempt at the Indiana Treatment Center at some unspecified time in the past. While we commend Gabbard for her apparent attempt to address her substance abuse pending the resolution of her case, we do not find that these late-breaking efforts render her sentence inappropriate.

[24] Gabbard contends that her sentence is inappropriate because she demonstrated remorse for her offenses that the trial court did not credit. However, although Gabbard pleaded guilty to the two dealing offenses, she received a great benefit for her plea in that the State agreed to dismiss the six remaining felony charges pending against her. In addition, Gabbard maintained at her sentencing hearing that she had not actually sold any drugs when she dealt, an equivocation which the trial court justly found demonstrated that she had not truly accepted responsibility for the offenses. Gabbard also thought that smuggling drugs into jail was something that "just happened," which we conclude demonstrated a lack of insight into the gravity of the offense. (Tr. Vol. II, p. 24). In light of her criminal history, unaddressed substance abuse, the substantial benefit Gabbard received from her plea, and her equivocation at

her sentencing hearing, we conclude that Gabbard has failed to demonstrate that her sentence is inappropriate given her character. *Robinson*, 91 N.E.3d at 577.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it sentenced Gabbard and that her sentence is not inappropriate given the nature of her offenses and her character.

Affirmed.

Kirsch, J. and Robb, J. concur