ATTORNEY FOR APPELLANT
Joel M. Schumm
Indiana University School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

## No. 43S05-0606-CR-230

ALEXANDER J. ANGLEMYER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Kosciusko Superior Court, No. 43D01-0505-FB-76
The Honorable Duane G. Huffer, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 43A05-0510-CR-590

_____


**June 26, 2007**


**Rucker, Justice.**

**Summary**

In this opinion we discuss the respective roles of Indiana trial and appellate courts under the 2005 amendments to Indiana's criminal sentencing statutes. We hold that where a trial court imposes sentence for a felony offense it is required to issue a sentencing statement that includes a reasonably detailed recitation of the trial court's reasons for the sentence imposed. The standard of review is abuse of discretion.

**Facts and Procedural History**

Around 10:00 p.m. on May 14, 2005, Alexander J. Anglemyer telephoned a local restaurant and ordered a pizza. He advised the person taking the order that the delivery driver should bring change for a one hundred dollar bill. Anglemyer provided the address to a vacant house located at the end of a residential street. When the driver arrived Anglemyer walked up to him with his hands behind his back. The driver thought that Anglemyer was reaching for his wallet, but "the next thing [the driver] kn[e]w, [he] got hit in the head." App. at 30. The driver fell to the ground where Anglemyer continued to beat and kick him while shouting "[g]ive me your money." Id. The driver tossed Anglemyer a pouch containing cash and checks. As a result of the attack the driver suffered severe pain, a broken right arm, and a laceration to his head requiring seven staples. Id. at 7.

Anglemyer was arrested shortly thereafter and later charged with Count I, robbery as a Class B felony, and Count II, battery as a Class C felony. Under the terms of a written plea agreement, Anglemyer agreed to plead guilty as charged. Among other things the agreement provided that the "sentence will not exceed sixteen (16) years executed. Each count's sentence shall run consecutive." Id. at 8. The trial court accepted the agreement, and Anglemyer pleaded guilty pursuant to its terms. At the sentencing hearing the trial court imposed a ten-year sentence for the Class B felony conviction and a six-year sentence for the Class C felony conviction. Ordering the sentences to run consecutively, the trial court imposed a total term of sixteen years.

Appealing his sentence Anglemyer raised a single issue, "Whether the maximum possible sentence imposed under the Plea Agreement is inappropriate in light of Anglemyer's character

2

and the nature of the offenses." Br. of Appellant at 2. The Court of Appeals declined to address this claim.[1] However, because in the argument section of his brief Anglemyer focused upon alleged trial court error in identifying and weighing aggravating and mitigating factors, the Court of Appeals addressed these claims. Concluding, among other things, that under the amended statutory scheme any error related to the trial court's findings of aggravating and mitigating circumstances is harmless, the court affirmed the trial court's judgment. Anglemyer v. State, 845 N.E.2d 1087, 1090-92 (Ind. Ct. App. 2006). We previously granted transfer, thereby vacating the Court of Appeals' opinion. See Anglemyer v. State, 855 N.E.2d 1012 (Ind. 2006) (Table); Ind. Appellate Rule 58(A). We now affirm the judgment of the trial court, but for reasons slightly different from those of our colleagues.

## Background

In order to produce more uniform sentences the Indiana Legislature adopted a sentencing scheme in 1977 that included a fixed term presumptive sentence for each class of felonies. See Ind. Code §§ 35-50-2-3 to -7 (West Supp. 1977). These statutes also created upper and lower limits for each class of felony offenses. Id. In deciding whether to depart from the presumptive sentence, the trial judge was required to consider five enumerated factors and could consider various other aggravating and mitigating factors. See I.C. § 35-4.1-4-7 (West Supp. 1977). The upper and lower limits were revised over the years, but from the time this sentencing arrangement was adopted, our courts understood it as requiring a given presumptive term for each class of crimes from which a judge could deviate upon a finding of aggravating or mitigating circumstances deemed adequate to justify adding or subtracting years. See, e.g., Henderson v. State, 769 N.E.2d 172, 179-80 (Ind. 2002); Gardner v. State, 270 Ind. 627, 388 N.E.2d 513, 516-19 (1979).[2] To facilitate this sentencing arrangement we determined that when

---

[1] Relying on authority that stood for the proposition that once a defendant enters a plea agreement that calls for a sentencing cap, the defendant inherently agrees that such a sentence is appropriate, the court determined that Anglemyer "waived his appropriateness claim." Anglemyer v. State, 845 N.E.2d 1087, 1092 (Ind. Ct. App. 2006). We recently disapproved of this proposition. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

[2] For example, Indiana Code section 35-50-2-5 (2004) provided that a person convicted of a Class B felony "shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances . . . ."

a trial judge deviated from the fixed term presumptive sentence, it was required to "(1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance ha[d] been determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of circumstances." Prickett v. State, 856 N.E.2d 1203, 1207 (Ind. 2006); see also Harris v. State, 659 N.E.2d 522, 527-28 (Ind. 1995); Hammons v. State, 493 N.E.2d 1250, 1254 (Ind. 1986); Robinson v. State, 477 N.E.2d 883, 886 (Ind. 1985).

In 2000 the United States Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi involved a New Jersey "hate crime" statute that authorized a trial court to increase the sentencing range for a crime when the court found, by a preponderance of the evidence, that the defendant's purpose in committing the crime was to intimidate an individual or a group because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. Id. at 468-69. Finding this statute unconstitutional under the Fourteenth Amendment's Due Process Clause, the Court announced the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

Four years later in Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court reiterated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 301 (quoting Apprendi, 530 U.S. at 490). However, the Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 303 (emphasis omitted). The Court further explained, "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." Id. at 303-04. The Court thus declared that defendant Blakely's sentence, enhanced based on various facts found by the sentencing judge, violated Blakely's Sixth Amendment right to a jury trial. Id. at

4

305.[3]  Not surprisingly, this decision cast doubt over the constitutionality of sentencing schemes throughout the country.[4]  And Indiana was no exception.

Responding to Blakely this Court declared that Indiana's fixed term sentencing scheme was the functional equivalent of the sentencing scheme the Supreme Court disapproved in Blakely.  In Smylie v. State, 823 N.E.2d 679 (Ind. 2005), we noted that, "Both establish a mandatory starting point for sentencing criminals based on the elements of proof necessary to prove a particular offense and the sentencing class into which the offense falls.  The trial court judge then must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed.  It is this type of judicial fact-finding that concerned the Court in Blakely."  Id. at 683.  We thus concluded that Indiana's sentencing scheme ran afoul of the Sixth Amendment because "it mandates *both* a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term."  Id. at 685.  Although reaching this conclusion, we identified two alternative ways in which Indiana's sentencing scheme could pass constitutional muster: "(1) our present arrangement of fixed presumptive terms, modified to require jury findings on facts in aggravation, or (2) a system in which there is no stated 'fixed term' (or at least none that has legally binding effect) in which judges would impose sentences without a jury."  Id.[5]  To remedy the constitutional infirmity, we

---

[3] In Blakely the defendant kidnapped his wife at knifepoint, bound her and put her in his truck, and drove from Washington to Montana.  The defendant pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm, a Class B felony.  Under Washington state law punishment for a Class B felony was capped at ten years.  See Blakely, 542 U.S. at 299.  According to Washington's Sentencing Reform Act, the standard sentencing range for Blakely's crime was 49 to 53 months.  Id.  The trial judge imposed an aggravated sentence of 90 months—37 months over the standard range—pursuant to a Washington statute that allowed an increased sentence if a judge found "substantial and compelling reasons justifying an exceptional sentence."  Id. (quoting Wash. Rev. Code § 9.94A.120(2) (2000)).  The Washington trial judge had relied on "deliberate cruelty," an aggravating factor enumerated in the statutes.  Id. at 300.

[4] As Justice O'Connor observed, "The consequences of today's decision will be as far reaching as they are disturbing.  Washington's sentencing system is by no means unique.  Numerous other States have enacted guidelines systems, as has the Federal Government.  Today's decision casts constitutional doubt over them all and, in so doing, threatens an untold number of criminal judgments."  Blakely, 542 U.S. at 323 (O'Connor, J., dissenting) (citations omitted).

[5] We observed that this latter alternative reflected the solution reached by the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) (Applying Blakely to the Federal Sentencing Guidelines, the Court severed and excised a portion of the sentencing statute that made the sentence indicated by the Guidelines

5

endorsed the former alternative, namely: a jury must find the facts used to enhance a fixed presumptive term. In our view, jury sentencing was more faithful to "the overarching theme of Indiana's 1977 sentencing reform," that of "abandon[ing] indeterminate sentencing in favor of fixed and predictable penalties." Id. at 686.

Within weeks of Smylie, the Legislature amended Indiana's sentencing statutes essentially adopting the second alternative Smylie identified. The Legislature left intact lower and upper limits for each class of felony offenses, but eliminated fixed presumptive terms in favor of "advisory sentences" that are between the minimum and maximum terms. See I.C. § 35-50-2-3 to –7.[6] In addition the Legislature eliminated the requirement that trial courts must consider certain mandatory circumstances when determining the exact sentence to be imposed. Rather, the amended statute now includes a non-exhaustive list of aggravating and mitigating circumstances trial courts "may consider," I.C. § 35-38-1-7.1 (a)-(b), and provides in part:

> A court may impose any sentence that is:
>
> (1) authorized by statute; and
> (2) permissible under the Constitution of the State of Indiana;
> *regardless of the presence or absence of aggravating circumstances or mitigating circumstances*.

I.C. § 35-38-1-7.1(d) (emphasis added). Notwithstanding this provision the Legislature retained Indiana Code section 35-38-1-3 that provides:

> Before sentencing a person for a felony, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and to present information in his own behalf. The court shall make a record of the hearing, including:
>
> (1)  a transcript of the hearing;

---

range mandatory unless the trial court found aggravating or mitigating circumstances not adequately considered by the U.S. Sentencing Commission.).

[6] For example Indiana Code section 35-50-2-5 provides that a person convicted of a Class B felony "shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." We note that the "advisory" sentences under the newly enacted statutes are the same as the "presumptive" sentences under the previous statutes.

6

>     (2)    a copy of the presentence report; and
>     (3)    if the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes.

In the aftermath of these legislative revisions the Court of Appeals has been divided on whether and to what extent trial judges are now required to make sentencing statements explaining their sentencing decisions and whether any such statements must include findings of aggravating and mitigating factors. Closely related to these issues are the scope and role of appellate review.[7] This lack of consensus is understandable. Writing for the panel in Gibson v. State, 856 N.E.2d 142 (Ind. Ct. App. 2006), Judge Barnes noted the challenges courts now face in a post-Blakely/Smylie world. He observed, "[T]he new statutes raise a new set of questions as to the respective roles of trial and appellate courts in sentencing, the necessity of a trial court continuing to issue sentencing statements, and appellate review of a trial court's finding of aggravators and mitigators under a scheme where the trial court does not have to find aggravators or mitigators to impose any sentence within the statutory range for an offense, including the maximum sentence. The continued validity or relevance of well-established case law developed under the old 'presumptive' sentencing scheme is unclear." Id. at 146. We acknowledge Judge Barnes' concerns. We also observe that subsequent to this case reaching us, the Legislature has spoken further on the subject mandating that, "After a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes." Pub. L. No. 178-2007 (to be codified at I.C. § 35-38-1-1.3) (effective July 1, 2007).

---

[7] Compare Golden v. State, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), trans. denied; McDonald v. State, 861 N.E.2d 1255, 1259 (Ind. Ct. App. 2007), trans. pending; Windhorst v. State, 858 N.E.2d 676, 678 n.2 (Ind. Ct. App. 2006), trans. granted; Anglemyer, 845 N.E.2d at 1090-91 (all holding that challenges to a trial court's sentencing statement present no issue for appellate review); with Williams v. State, 861 N.E.2d 714, 716 (Ind. Ct. App. 2007), trans. not sought; Windhorst, 858 N.E.2d at 681 (Vaidik, J., concurring in result); McMahon v. State, 856 N.E.2d 743, 749 (Ind. Ct. App. 2006), trans. not sought; Gibson, 856 N.E.2d at 146-47, trans. not sought (all finding that trial courts have a continuing obligation to issue sentencing statements). See also Luhrsen v. State, 864 N.E.2d 452, 457 (Ind. Ct. App. 2007); Henderson v. State, 848 N.E.2d 341, 347-48 n.4 (Ind. Ct. App. 2006) (Sullivan, J., concurring in result) (both recognizing the split among panels of the Court of Appeals).

**Analysis**

We begin our discussion by observing that Indiana's new sentencing statutes apparently were enacted to resolve the Sixth Amendment problem <u>Blakely</u> presented.  By eliminating fixed terms, the Legislature created a regime in which there is no longer a maximum sentence a judge "may impose without any additional findings."  <u>Blakely</u>, 542 U.S. at 304 (emphasis omitted).  And this is so because for <u>Blakely</u> purposes the maximum sentence is now the upper statutory limit.  As a result, even with judicial findings of aggravating circumstances, it is now impossible to "increase[ ] the penalty for a crime beyond the prescribed statutory maximum."  <u>Blakely</u>, 542 U.S. at 301 (quoting <u>Apprendi</u>, 530 U.S. at 490).[8]

This is not to say however that a sentencing statement setting forth the trial court's reasons for the sentence imposed no longer plays a role in the trial court's sentencing decision.  Even before the 2005 and 2007 statutes requiring sentencing statements, our case law made clear that sentencing statements served two primary purposes: (1) they guarded against arbitrary and capricious sentencing, and (2) they provided an adequate basis for appellate review.  <u>Dumbsky v. State</u>, 508 N.E.2d 1274, 1278 (Ind. 1987).  We have also observed:

> [A] statement of reasons for imposing a particular sentence serves numerous other goals beyond the two primary goals.  An attempt by the sentencing judge to articulate his [or her] reasons for a sentence in each case should in itself contribute significantly to the rationality and consistency of sentences.  A statement by the sentencing judge explaining the reasons for commitment can help both the defendant and the public understand why a particular sentence was imposed.  An acceptance of the sentence by the defendant without bitterness is an important ingredient in rehabilitation, and acceptance by the public will foster confidence in the criminal justice system.

<u>Abercrombie v. State</u>, 417 N.E.2d 316, 319 (Ind. 1981).  These goals are no less important today.

---

[8] In a recent decision the United States Supreme Court referenced Indiana as one of two jurisdictions that has modified its sentencing statutes in the wake of <u>Apprendi</u> and <u>Blakely</u> to permit judges "'to exercise broad discretion . . . within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal."  <u>Cunningham v. California</u>, 127 S. Ct. 856, 871 (2007) (quoting <u>Booker</u>, 453 U.S. at 233).

Even though the statute unambiguously declares that a trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors, it is important to note that the statute does not prohibit the judge from identifying facts in aggravation or mitigation. Indeed the statute requires that if the trial court "finds" the existence of "aggravating circumstances or mitigating circumstances" then the trial court is required to give "a statement of the court's reasons for selecting the sentence that it imposes." I.C. § 35-38-1-3. This language suggests a legislative acknowledgement that a sentencing statement identifying aggravators and mitigators retains its status as an integral part of the trial court's sentencing procedure. And this view is consistent with Blakely, which we have noted, "does not prohibit a trial court from finding aggravating circumstances. What [Blakely] does prohibit is a trial court finding an aggravating circumstance *and* enhancing a sentence beyond the statutory maximum." Davidson v. State, 849 N.E.2d 591, 594-95 (Ind. 2006). Again, we note, under the amended statutory regime it is impossible to enhance a sentence beyond the statutory maximum.

We hasten to reiterate that the 2005 amendments were designed to rectify the Sixth Amendment problem that Blakely presented. We discern no legislative intent otherwise to alter fundamentally the trial procedure for sentencing criminal defendants. Thus, construing what we believe is a legislative intent to retain the traditional significance of sentencing statements we conclude that under the new statutory regime Indiana trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense. In order to facilitate its underlying goals, see Abercrombie, 417 N.E.2d at 319, the statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

But what of appellate review? It is true that the discretion trial courts are now afforded in imposing sentences is significantly broader than that existing under the prior statutes. But our standard of review is only modestly altered by the new sentencing regime. That is to say, subject to the review and revise power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion.

Smallwood v. State, 773 N.E.2d 259, 263 (Ind. 2002). Nothing in the amended statutory regime changes this standard. So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. As we have previously observed, "In order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of [its] reasons for imposing the sentence . . . . This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record." Page v. State, 424 N.E.2d 1021, 1023 (Ind. 1981). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006) (quoting In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)).

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-Blakely statutory regime, a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors. See, e.g., Jackson v. State, 728 N.E.2d 147, 155 (Ind. 2000) (finding that the Court could not determine from the sentencing statement whether the trial court "properly weighed" the aggravating and mitigating factors); Morgan v. State, 675 N.E.2d 1067, 1073-74 (Ind. 1996) (finding that the Court could not conclude that the aggravating and mitigating factors were "properly weighed" where the sentencing statement did not, in part, explain its balancing process). And this is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then "impose

10

any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana." I.C. § 35-38-1-7.1(d). This does not mean however that criminal defendants have no recourse in challenging sentences they believe are excessive.

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Childress, 848 N.E.2d at 1080 (emphasis omitted) (quoting Buchanan v. State, 767 N.E.2d 967, 972 (Ind. 2002)). This appellate authority is implemented through Appellate Rule 7(B), which provides that the "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is on this basis alone that a criminal defendant may now challenge his or her sentence where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue.

To summarize, the imposition of sentence and the review of sentences on appeal should proceed as follows:
1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.
2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.
3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.
4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

With the foregoing framework in mind, we now turn to Anglemyer's claims.[9]

---

[9] The amended sentencing scheme was enacted on April 25, 2005. Pub. L. No. 71-2005, § 3 (codified at I.C. § 35-38-1-7.1(d) (West Supp. 2005); Pub. L. No. 71-2005, § 5 (codified at I.C. § 35-50-2-1.3 (West Supp. 2005)). It thus applies to Anglemyer whose crimes were committed thereafter.

11

In imposing sentence the trial court entered a sentencing statement identifying as aggravating factors Anglemyer's criminal history that included several juvenile adjudications as well as a September 2004 conviction for criminal conversion as a Class A misdemeanor and a December 2004 conviction for visiting a common nuisance, a Class B misdemeanor. As additional aggravating factors the court cited the seriousness of this offense and also noted that within months of the December 2004 conviction Anglemyer committed the instant offenses. The court listed Anglemyer's age – eighteen – as the sole mitigating factor, but gave "greater weight to aggravating factors." App. at 84.

Anglemyer does not contest his ten-year advisory sentence for the Class B robbery conviction. Instead he focuses on the six-year sentence – two years above the advisory sentence – the trial court imposed for the Class C battery conviction. And except for the trial court's finding of the "seriousness of this offense" Anglemyer does not challenge the propriety of the remaining aggravating factors. Rather he contends, "Several valid mitigators were overlooked by the Trial Court . . . ." Br. of Appellant at 10.

As one might anticipate, not having the benefit of our analysis today, the trial court's sentencing statement does not include a "reasonably detailed recitation" of the court's reasons for imposing a six-year term. However, the statement does identify both aggravating and mitigating factors and explain why they are deemed as such. It is thus sufficient for this Court to conduct meaningful appellate review.

Concerning the seriousness of the offense, this aggravator, which implicitly includes the nature and circumstances of the crime as well as the manner in which the crime is committed, has long been held a valid aggravating factor. See, e.g., Taylor v. State, 695 N.E.2d 117, 120 (Ind. 1998). We find no error here.

Anglemyer also contends the trial court "overlooked" the following mitigating factors: (1) the crime was the result of circumstances unlikely to recur, (2) he pleaded guilty, (3) he expressed remorse, and (4) he suffers "significant mental illness." Br. of Appellant at 10.

Our existing precedent is equal to the task of resolving this contention. As our courts have determined in the past, the trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing. Georgopulos v. State, 735 N.E.2d 1138, 1145 (Ind. 2000); see also Creekmore v. State, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006) ("[I]f the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the factor is not significant, and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal."). The record shows that at the sentencing hearing, Anglemyer argued the existence of two mitigating factors: his age and mental illness. App. at 100-02. As mentioned earlier, the trial court identified Anglemyer's age as a mitigating circumstance but assigned it minimal weight. We thus address Anglemyer's mental illness claim. The remaining alleged mitigating circumstances are precluded from review.

Because the trial court's recitation of its reasons for imposing sentence included a finding of mitigating circumstances, the trial court was required to identify all significant mitigating circumstances. See also Battles v. State, 688 N.E.2d 1230, 1236 (Ind. 1997) (A sentencing statement must include those mitigators the trial court found to be significant.). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Carter v. State, 711 N.E.2d 835, 838 (Ind. 1999); see also Wilkins v. State, 500 N.E.2d 747, 749 (Ind. 1986) ("If significant mitigating circumstances are clearly supported by the record, it would be proper to remand with instructions to reconsider the sentence and enter a new sentencing statement in compliance with the foregoing requirements."). However, "If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." Fugate v. State, 608 N.E.2d 1370, 1374 (Ind. 1993).

Anglemyer is incorrect in his assertion that the trial court "overlooked" his mental illness as a mitigating factor, or in the language of our decision today, that "the sentencing statement omits [a] reason[]," specifically Anglemyer's mental illness, that is "supported by the record." The record shows that at sentencing Anglemyer presented to the trial court a lengthy

psychological evaluation conducted on March 29, 2001 which, summarized, revealed that at age fourteen Anglemyer suffered a personality disorder characterized by symptoms of "situational stress," "depression," feelings of "guilt[]" and "inadequate amounts of energy." App. at 77. Anglemyer also presented excerpts of a psychiatric evaluation dated July 1, 2002 that noted, "Alex has a long history of emotional and behavioral problems." Id. at 82. He was diagnosed with "Bipolar Mood Disorder," "Intermittent Explosive Disorder," and "Oppositional Defiant Disorder." Id. at 83.

Apparently around the time Anglemyer robbed and battered the pizza delivery driver, he was enrolled in a program at a mental health facility that included monitoring of Anglemyer's activities and providing him with medication to control his behavior. But Anglemyer dropped out of the program. Indeed the trial court questioned Anglemyer's counsel on this very point:

> [Trial Court] I guess my question was, was he involuntarily taken off or did he make a choice to not receive aid?
>
> [Defense counsel] There was a choice made in that he was offered by the Bowen Center the opportunity to continue on the program; however, the monitoring system is something that an 18 year old was not ready for. . . . He would have been monitored on a daily basis, counseling on a daily basis. As an 18 year old, he said no at that time. . . .
>
> [Trial court] Here's the problem[] that I have with your argument . . . Mr. Anglemyer, is to the extent that in our country at the present time an adult is considered to be 18 years of age. At 18 years of age you knew you had a problem. You were offered a helping hand and you slapped that hand away. . . . You could have lived your own life, but you didn't have to affect [the victim's] life and you did. He was injured. He lost work because you chose to not work, not get the help from the Bowen Center.

App. at 101-02, 104-05. It is apparent to us that rather than overlooking Anglemyer's mental illness, the trial court determined it was not significant and thus would not be a factor influencing the trial court's sentencing decision. This was the trial court's call. We find no error. To the extent Anglemyer complains that the trial court abused its discretion in failing to give his proffered mitigating factor greater weight, this claim is not available for appellate review.

14

We last address Anglemyer's inappropriateness claim. Although citing Appellate Rule 7(B) Anglemyer tells us nothing about the nature of the offense and little about his character. Instead he simply says, "An appropriate consideration of sentencing criteria should cause this Court to reduce Anglemyer's sentence for Count II (Battery) to the advisory period of four (4) years. Further, this sentence should be suspended and Anglemyer placed on probation for this period." Br. of Appellant at 7.

We have declared, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Childress, 848 N.E.2d at 1080. Anglemyer has not carried this burden. In any event, regarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. Id. at 1081. The advisory sentence for a Class C felony is four years. See I.C. § 35-50-2-6(a). Here the trial court imposed a six-year term. Although the nature of the offense may justify an advisory sentence under some circumstances, those circumstances are not present in this case. The victim's beating was unnecessarily brutal. Anglemyer beat and kicked the victim while he was merely doing his job—delivering a pizza. As for the character of the offender, in addition to Anglemyer's history of criminal conduct, he was also on bond at the time he committed this offense. Further the instant offense was carried out through subterfuge, deceit, and careful planning. In the end we are not persuaded that nature of the offense or character of the offender justifies revising Anglemyer's sentence.

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.