## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 04 2019, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randall J. Hammond
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randy D. Stokes,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 4, 2019

Court of Appeals Case No.
18A-CR-2793

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause Nos.
02D05-1708-F6-911
02D05-1709-F6-1079
02D05-1709-F6-1080

**Robb, Judge.**

# Case Summary and Issues

[1] Following three separate incidents, Randy Stokes was charged in three separate causes with theft, all Level 6 felonies, pleaded guilty in each matter, and entered into a drug court program. After Stokes violated the terms of the program, he was convicted and sentenced to one year in each matter, to be served consecutively. Stokes appeals his sentences and raises two issues on appeal: (1) whether the trial court abused its discretion in sentencing him; and (2) whether his sentences are inappropriate in light of the nature of his offenses and his character. Concluding the trial court did not abuse its discretion and Stokes' sentences are not inappropriate, we affirm.

# Facts and Procedural History

[2] On May 8, 2017, Stokes visited a Walmart in Fort Wayne, Indiana. A customer service manager observed Stokes select several packages of meat, valued at $96.20, place them into his shopping cart, push the cart through all points of pay, and exit the store. On May 23, Stokes entered a local Kroger store, selected an empty shopping cart, pushed it to the back of the store, and placed eleven packages of meat in his cart. Stokes pushed the cart into another aisle, placed cardboard boxes over the meat in an attempt to hide the items, and left the store without paying. The value of the stolen merchandise was $251.66. Four days later, Stokes returned to the Walmart and placed two containers of beer, valued at $18.56, in his shopping cart. As Stokes pushed the cart past all

points of pay toward the exit, he was approached by the store's asset protection officer.

[3] The State charged Stokes with three separate counts of theft, all Level 6 felonies, in separate causes.[1] On October 10, 2017, Stokes pleaded guilty to the charges and the trial court placed him in the Allen County Drug Court Diversion Program. On September 17, 2018, Stokes' case manager filed a petition to terminate his participation in the drug court program. The petition alleged that Stokes violated the conditions of the program by failing a drug screen on August 31, failing to submit to a random drug screen on September 4, and failing to report to the Allen County Lock-Up Facility. The trial court revoked his participation in drug court, ordered a pre-sentence investigation, and scheduled a sentencing hearing.

[4] A sentencing hearing was held on October 30 and the trial court found Stokes guilty of theft in each cause. In sentencing Stokes, the trial court identified mitigating and aggravating circumstances:

> I do find as mitigating circumstances your plea of guilty and acceptance of responsibility. I do find as aggravating circumstances your prior criminal record, with failed efforts at rehabilitation covering a period of time from 1993 to 2018, where you've accumulated 12 misdemeanor convictions, three prior

---

[1] Stokes was charged with theft as a Level 6 felony in each cause due to his prior conviction for theft in 2007. *See* Ind. Code § 35-43-4-2(a)(1)(C)(i) ("A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor. However, the offense is . . . a Level 6 felony if . . . the person has a prior unrelated conviction for . . . theft[.]").

felony convictions. You've been given short jail sentences, longer jail sentences, treatment at Caring About People. You've been ordered to perform community service; you've been assessed fines; you've been on unsupervised probation; you've had services through Criminal Division Services; you've been through Community Corrections programing. You've been on active adult probation; home detention; the Department of Correction; and Drug Court, and Drug Court was not once, but twice. I think you were one of the first people that we took back into Drug Court when we changed the way that we were doing our assessments, and nothing has worked[.] You continue to lie to yourself and manipulate the system. You failed to appear in [court] on September 4th. You were aware on September 4th that we were going to address your relapse. You made no effort to contact [your case manager] to tell him that you were at Park Center or that you would be admitted. Park Center told us you were admitted at 2:15 on September 4th. They indicated you reported to . . . the medication clinic [that] morning. . . said you were depressed and needed to be admitted, tested positive for cocaine upon your admission to the unit, and you were to be discharged on September 6th. They said, "No, we're gonna hold onto you another day." You checked out against medical advice the evening of September 6th. You spoke with [your case manager] on September 7th, you were clearly instructed to turn yourself in. You did not turn yourself in until September 10th; and when [your case manager] met with you at the jail you, were confronted with all of the things that I just said and you, ultimately, admitted you didn't want to spend extra time in jail. You thought if you turned yourself in on Friday, you'd get released on Monday and that would be the end of that. You clearly don't get it, [Mr. Stokes].

Transcript, Volume 2 at 20-21. Stokes was sentenced to one year in the Indiana Department of Correction in each cause with the sentences to be served

consecutively. The trial court also ordered Stokes to pay $251.66 in restitution to Kroger. Stokes now appeals.

# Discussion and Decision

## I. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Thus, we review only for an abuse of discretion, which occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before [it], or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. A trial court may abuse its discretion by: (1) failing to enter a sentencing statement; (2) entering a sentencing statement that explains reasons for imposing the sentence that are unsupported by the record; (3) omitting reasons clearly supported by the record and advanced for consideration; or (4) finding factors that are improper as a matter of law. *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012). The identification or omission of reasons provided for imposing a sentence are reviewable on appeal for an abuse of discretion, but the weight given to those reasons is not subject to appellate review. *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied*.

We first note that the determination of mitigating circumstances is within the trial court's discretion. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. A trial court is not obligated to accept a defendant's claim

as to what constitutes a mitigating circumstance, *Weedman*, 21 N.E.3d at 893, nor is it required to weigh a mitigating factor as heavily as the defendant requests, *Field v. State*, 843 N.E.2d 1008, 1010 (Ind. Ct. App. 2006), *trans. denied*. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493. Here, the trial court identified Stokes' guilty plea and acceptance of responsibility as mitigating circumstances in imposing his sentences. On appeal, Stokes argues the trial court "failed to identify mitigating factors that were both significant and clearly supported by the record[,]" namely his remorse and history with substance abuse and mental health issues. Brief of Appellant at 19.

[7] We begin by addressing Stokes' contention that the trial court should have identified his remorse as a mitigating factor. Remorse has been recognized by our supreme court as a valid mitigating factor. *Hape v. State*, 903 N.E.2d 977, 1002 (Ind. Ct. App. 2009), *trans. denied*. However, a trial court is under no obligation to accept a defendant's alleged remorse as a mitigating circumstance. *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. Because the trial court has the ability to directly observe the defendant, it is in the best position to determine whether a defendant's remorse is genuine. *Id*. And a trial court's assessment of a defendant's proclaimed remorse is similar to a determination of credibility. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). "Without evidence of some impermissible consideration by the court, we accept

its determination of credibility." *Id*. Thus, we afford the trial court's evaluation of a defendant's remorse substantial deference. *Phelps*, 969 N.E.2d at 1020.

[8]     At the sentencing hearing, Stokes stated:

> I feel awful for not completing Drug Court, I know I could have done it, and I did everything, everything to the best of my abilities, and I just let myself down when I ended up using that last time. I hate that I'm addicted to this awful drug.

Tr., Vol. 2 at 19. In response, however, the trial court explained that Stokes has been provided with two opportunities to participate in the drug program and failed to turn himself in after being instructed to do so. The trial court stated Stokes "continue[s] to lie to [himself] and manipulate the system." *Id*. at 20. Notably, as the State points out, Stokes' statement of remorse is confined to his relapse and failure to complete the drug court program rather than his participation in the underlying offenses. The record clearly demonstrates that after listening to Stokes, the trial court did not believe his remorse was genuine and exercised its discretion in determining it should not be considered a mitigating circumstance. We will not second guess the trial court's evaluation of Stokes' professed remorse. *See Phelps*, 969 N.E.2d at 1020; *see also Pickens*, 767 N.E.2d at 535.

[9]     Stokes also argues the trial court failed to recognize his history of substance abuse as a mitigating factor. Although we have recognized that a defendant's history with substance abuse may be a mitigating circumstance, *Hape*, 903 N.E.2d at 1002, it may also be an aggravating circumstance, *Healey*, 969 N.E.2d

at 617. "[W]hen a defendant is aware of a substance abuse problem but has not taken appropriate steps to treat it, the trial court does not abuse its discretion by rejecting the addiction as a mitigating circumstance." *Hape*, 903 N.E.2d at 1002.

[10] Stokes' presentence investigation report reveals that he began consuming alcohol and using marijuana as a teenager. He began using cocaine daily from age twenty-four until age forty-seven. He then quit for several years but resumed using again. Most recently, he indicated he used cocaine twice in 2018 while in the drug court program and has attended AA/NA meetings since 1998. At sentencing, Stokes argued he suffered from severe cocaine and alcohol-use disorder and had been doing well in the drug court program prior to his relapse. Stokes' criminal history reveals several convictions related to his drug and alcohol use. However, despite treatment, Stokes continued to abuse substances while in the drug court program. Thus, we find no error in the trial court's decision not to recognize Stokes' history with substance abuse as a mitigating circumstance.[2]

[11] Stokes also argues the trial court should have found his mental health issue, namely depression, a mitigating circumstance. Mental illness is not necessarily a significant mitigator; "rather, it is a mitigating factor to be used in certain circumstances, such as when the evidence demonstrates longstanding mental

---

[2] Even if this court determined the trial court failed to identify this as a mitigating circumstance, we are not convinced the trial court would have imposed a lesser sentence.

health issues or when the jury finds that a defendant is mentally ill." *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans. denied*. Our supreme court has outlined several factors for courts to consider in weighing the mitigating force of a defendant's mental health issues, including the extent of the inability to control behavior, the overall limit on function, the duration of the illness, and the nexus between the illness and the crime. *Covington v. State*, 842 N.E.2d 345, 349 (Ind. 2006).

[12] "In order for a defendant's mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011), *trans. denied*. At sentencing, Stokes argued, by counsel, that while in the drug court program he "became overwhelmed, he became depressed, and he simply didn't use the tools that he had learned while he was in the program, didn't think that the meds that they were giving him for his depression were working. . . . Depression, more often [than] not for [Stokes], leads to using poor judgment and, oftentimes, relapse[.]" Tr., Vol. 2 at 17. His attorney asserted that Stokes' criminal history is related to his mental health and substance abuse issues. Similarly, in his statement to the trial court, Stokes explained that all of his arrests have been related to his drug or alcohol use, mainly cocaine.

[13] The State contends that Stokes "has not alleged or demonstrated any nexus between his mental health and the thefts, the crimes in question." Brief of Appellee at 12. We agree. Although the record demonstrates Stokes suffers from mental health issues, Stokes' proffered explanation only provides some

evidence of a possible nexus between his mental health issues and his failure to comply with the drug court program rather than offering any explanation for how they relate to the underlying crimes. Stokes has failed to demonstrate that his mental health issues are significant and clearly supported by the record, nor has he provided any link between his mental health and the instant offenses. The trial court did not abuse its discretion when it did not recognize Stokes mental health issues as a mitigating circumstance.

[14] In sum, the trial court did not err in omitting Stokes' proffered mitigating circumstances and therefore did not abuse its discretion in sentencing Stokes.

## II. Inappropriate Sentence

### A. Standard of Review

[15] Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Sentencing decisions rest within the discretion of the trial court and, as such, should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's

character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[16] It is the defendant who bears the burden of demonstrating his or her sentence is inappropriate under the standard, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors in the record for such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, "whether we regard a sentence as [in]appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

## B. Nature of the Offenses

[17] We begin our analysis of the "nature of the offense" prong with the advisory sentence. *Reis*, 88 N.E.3d at 1104. The advisory sentence is the starting point the Indiana legislature has selected as an appropriate sentence for the committed crime. *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 6 felony is between six months and two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). Stokes received the advisory sentence in each cause.

[18] The nature of the offense is found in the details and circumstances of the offenses and the defendant's participation therein. *Lindhorst v. State*, 90 N.E.3d 695, 703 (Ind. Ct. App. 2017). Stokes argues that all three offenses were non-violent in nature and the stores suffered little financial loss in each offense,

specifically no more than $251.66. *See* Br. of Appellant at 21. He also notes that he was charged with the lowest level felony in each theft. Although the circumstances surrounding the offenses are not egregious, the underlying facts of each theft were nearly identical and the thefts were all committed in the same month, demonstrating a clear pattern of criminal conduct. Ultimately, we cannot conclude Stokes' advisory sentences are inappropriate in light of the nature of the offenses.

## C. Character of the Offender

[19]   Next, we evaluate whether Stokes' character renders his sentences inappropriate. We conclude it does not. In this case, the trial court recognized Stokes' criminal history and failed rehabilitation efforts as aggravating circumstances in imposing his sentences.

[20]   The "character of the offender" portion of the Rule 7(B) standard refers to the general sentencing considerations and relevant aggravating and mitigating factors. *Williams v. State*, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003), *trans. denied*. A defendant's life and conduct are illustrative of his or her character. *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. And a defendant's criminal history is one relevant factor in analyzing his or her character. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history varies based on the "gravity, nature, and number of prior offenses in relation to the current offense." *Id*. This court has

held that "[e]ven a minor criminal record reflects poorly on a defendant's character[.]" *Reis*, 88 N.E.3d at 1105.

[21] Stokes' criminal history is comprised of twelve misdemeanor convictions and three felony convictions spanning twenty-five years. Among these are three convictions for criminal conversion and one conviction for theft. These same or similar offenses are significant in relation to the instant offenses and illustrate a disregard for the law and a pattern of undeterred criminal conduct despite intervention. Stokes' criminal record is also comprised of various failed rehabilitation efforts since 1993, including: varying periods of incarceration; community service; fines; unsupervised probation; community corrections program; drug court twice; active adult probation; home detention; treatment at Caring About People; and services through the Criminal Division Services. *See* Tr., Vol. 2 at 20. Stokes claims his enthusiasm and periods of compliance with the drug court program, prior to his relapse, demonstrate his good character. Although we commend Stokes on his efforts, as the trial court acknowledged, "[N]othing has worked . . . [Stokes] continue[s] to lie to [himself] and manipulate the system." *Id.* Despite Stokes' frequent contact with our criminal justice system, he was not deterred from committing the present offenses. *See Rutherford*, 866 N.E.2d at 874.

[22] The principal role of this court in reviewing of a defendant's sentence is "not to achieve a perceived 'correct' result in each case[,]" but to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225. Thus, the question is *not* whether the defendant's sentence is appropriate or another sentence is *more* appropriate;

rather, the test is whether the sentence is inappropriate. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Given Stokes' lengthy criminal history, failed rehabilitation efforts, and pattern of property-related crimes, we conclude Stokes' sentences are not inappropriate in light of his character and his offenses.

# Conclusion

[23] For the foregoing reasons, we conclude the trial court did not abuse its discretion when it did not recognize Stokes' remorse, history of substance abuse, and mental health issues as mitigating circumstances, and Stokes' sentences are not inappropriate in light of his character and the nature of his offenses. Therefore, we affirm.

[24] Affirmed.

Baker, J., and Najam, J., concur.