## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2020, 12:14 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Deborah B. Markisohn
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Karl G. Woodall,
Appellant-Defendant,

v.

State of Indiana,
*Appellee-Plaintiff.*

April 8, 2020

Court of Appeals Case No.
19A-CR-1022

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Trial Court Cause No.
49G04-1704-MR-12404

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Karl Woodall (Woodall), appeals his sentence for murder, a felony, Ind. Code § 35-42-1-1(1).

We affirm.

# ISSUE

Woodall presents the court with one issue, which we restate as: Whether the trial court abused its discretion when it identified the aggravating and mitigating circumstances for sentencing.

# FACTS AND PROCEDURAL HISTORY

In March 2017, Stefanie Coulson (Coulson) lived on the southside of Indianapolis in a home on Pleasant Run Parkway. Coulson was friends with her neighbors, Michael and Amy Fenton (Michael and Amy, respectively), who lived three houses down from Coulson. It was not unusual for friends and acquaintances to come and go from Coulson's home.

On March 26, 2017, Coulson was at home using methamphetamine with several people, including Woodall. Later in the day, Woodall took a nap at Coulson's home. Early in the morning of March 27, 2017, while Woodall was asleep, Coulson took the keys to Woodall's 2008 Honda minivan, picked up Amy, and ran errands, eventually stopping at a Dollar General store on the eastside of Indianapolis to root in the store's dumpster for items of interest.

[6] Around 2:00 a.m. on March 27, 2017, Woodall was awakened when Devin Achenbach (Achenbach) and Dusti Hutchins (Hutchins) knocked on the door of Coulson's home. When Achenbach and Hutchins pointed out that Woodall's minivan was not parked in Coulson's driveway, Woodall became enraged. Woodall went to the Fentons in search of his minivan. Michael was at home. Woodall called Coulson on Michael's cellphone and ordered her to return with his minivan. Woodall told Michael that "if his van wasn't back in 15 minutes that someone was gonna die that night." (Transcript Vol. III, p. 20). Michael was the only person present when Woodall made the statement. Michael was scared by Woodall's anger and his statement.

[7] Woodall returned to Coulson's home to await her return with the minivan. Woodall used Achenbach's cell phone to text David Patrick (Patrick) and ask Patrick to bring a single barrel shot gun to Coulson's house, which Patrick did. Coulson eventually returned with Woodall's minivan and parked at the Fenton home. At Woodall's request, Achenbach drove Coulson back to her home in Woodall's minivan. Woodall and Coulson began a very heated argument. Woodall would not allow anyone but Coulson in her home. However, at one point, Woodall came outside and ordered Achenbach, who was carrying a 9-millimeter Hi-Point handgun, to kill Coulson. When Achenbach refused, Woodall took Achenbach's handgun and told him, "You got 30 seconds to get out of here. If not, you're gonna be dead with her." (Tr. Vol. II, p. 111).

[8] Woodall went back into Coulson's home. Woodall used Achenbach's handgun to shoot Coulson twice, once through the jaw and once through her neck,

severing her spinal cord. Woodall also stabbed Coulson approximately thirty-four times in her head, neck, arms, and hands. Coulson died from these wounds. She was found later that morning by her roommate. Amy called the police.

[9] After Coulson was killed, Patrick drove Achenbach to Patrick's house on the eastside of Indianapolis. Woodall arrived later and changed his clothes. Patrick asked Woodall if "he had "cleaned up good[,]" and Woodall assured him that he had. (Tr. Vol. II, p. 115-16). Woodall told Achenbach that "if [he] was to tell . . . anything about the situation, [he] would be dead." (Tr. Vol. II, p. 117).

[10] Law enforcement's investigation quickly revealed Achenbach, Hutchins, and Woodall as potential sources of information about Coulson's death. Hutchins was known to the police through her dealings with a confidential informant, who, at the request of the police, arranged a controlled drug buy with Hutchins. On March 30, 2017, Hutchins was driven to the location of the controlled buy by Woodall in his 2008 Honda minivan.

[11] Woodall was taken into custody. Further police investigation revealed that cell phone records placed Woodall in the vicinity of Coulson's home during the murder. In addition, Woodall's fingerprint was found on a fired cartridge case located close to Coulson's body.

[12] On April 4, 2017, the State filed an Information, charging Woodall with murder. On February 25, 2019, the trial court convened Woodall's three-day

jury trial. Achenbach and Hutchins testified that only Woodall and Coulson were in the home at the time that they heard gunshots. The jury found Woodall guilty as charged.

[13] The pre-sentence investigation report (PSI) filed on April 5, 2019, indicated the following facts. Woodall had prior convictions for Class B misdemeanor disorderly conduct and Class D Felony theft. In addition, at the time that he committed the instant offense, Woodall was on pre-trial release for three open criminal cases in Marion County: one for Class A misdemeanor driving while suspended; a second for Level 6 felony theft with a prior theft conviction; and a third for Level 6 felony strangulation, Level 6 felony criminal confinement, two Counts of Level 6 felony domestic battery, and Class B misdemeanor criminal mischief. Woodhall had served in the United States Marine Corps for five years and was honorably discharged. Woodall reported having been diagnosed with ADD as a child and PTSD in 2011. He had been prescribed medication for his PTSD condition but did not take it consistently. Woodall also reported having night terrors since 2007.

[14] On April 10, 2019, the trial court held Woodall's sentencing hearing. In its oral sentencing statement, the trial court found as an aggravating circumstance that, while his criminal history was minimal, Woodall had violated the terms of his pre-trial release in his open Marion County criminal cases by committing the instant offense. The trial court also found as an aggravating circumstance that "[t]here were witnesses that were threatened, and that was clear in the trial. It was difficult. There was pre-trial, getting everything ready, partly because of

that." (Tr. Vol. IV, p. 76). The trial court also found the nature of the offense to be an aggravating circumstance, in that the injury to Coulson was greater than necessary to accomplish the offense and that the offense was brutal. In discussing the nature of the offense, the trial court observed that "[n]o one deserves to have their life taken that way. And certainly not by someone they trusted. That they had opened their home to. That they had been a friend to." (Tr. Vol. IV, p. 77). The trial court also noted that Woodall had a history of substance abuse, he had adequate time to change his mind about killing Coulson, he had planned to commit the offense by arranging for Patrick to bring the shot gun, and he had asked Achenbach to kill Coulson before killing her himself in a rage. The trial court acknowledged Woodall's military service but found that it could not "give it the weight I would like to be able to give." (Tr. Vol. IV, p. 77). In its written sentencing order, the trial court found that Woodall "threatened witnesses to try to prevent them from testifying." (Appellant's Conf. App. Vol. III, p. 74). The trial court sentenced Woodall to sixty-three years.

[15] Woodall now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[16] Woodall challenges the propriety of the aggravating and mitigating circumstances found by the trial court. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's

sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id.* at 490-91.

## I. *Aggravating Circumstances*

[17] Woodall contends that the trial court abused its discretion when it identified as aggravating circumstances his position of trust with Coulson and his threats to witnesses. Woodall argues that neither of these factors were supported by the record. We address each in turn.

### A. *Position of Trust*

[18] Our review of the trial court's oral and written sentencing statements leads us to conclude that Woodall's contention that the trial court found that he was in a position of trust with Coulson is based on a mischaracterization of the trial court's ruling. At the sentencing hearing, the State argued that Woodall was in a position of trust with Coulson, but we find no indication that the trial court adopted the State's argument. Rather, when discussing why it found that the nature of the offense was an aggravating circumstance, the trial court noted that Coulson had trusted Woodall, she had opened her home to him, and she had considered him a friend, none which equates to a finding that Woodall was in a

position of trust with Coulson. Woodall does not argue that the trial court abused its discretion when it found the nature of the offense to be aggravating. In addition, the trial court's written sentencing statement does not indicate that it found that Woodall was in a position of trust with Coulson. Because the factual underpinning of Woodall's argument is misplaced, we find no abuse of the trial court's discretion.

### B. *Intimidation of Witnesses*

[19] Woodall's argument pertaining to this aggravating circumstance is that the trial court erred because he only threatened one witness, Achenbach, not more than one witness, as found by the trial court. Woodall claims that the trial court's finding is supported as to Achenbach because there was evidence that he told Achenbach on the day of the murder that he "would be dead" if he said anything about Coulson's killing. (Tr. Vol. II, p. 117). However, Woodall argues that the record did not support that he threatened Hutchins by telling her that she and her children "would be killed if she discussed the matters in this case[,]" as argued by the State at sentencing. (Tr. Vol. IV, p. 72). The State counters that the trial court's finding was supported by evidence that Woodall threatened Achenbach and Michael on the day of the murder.

[20] We find that Woodall's argument on this point and the State's response are based on a misunderstanding of the trial court's finding. In its oral sentencing statement, the trial court did not specify which witnesses it found Woodall had threatened but noted that the threats had made trial preparation more difficult. In its written sentencing statement, the trial court found that Woodall had

"threatened witnesses to try to prevent them from testifying." (Appellant's Conf. App. Vol. III, p. 74). The trial court's written statement indicates to us that its finding was based on threats made by Woodall after the murder charge had been filed against him because testifying was not a possibility until then. We note that, prior to Woodall's trial, Achenbach, Patrick, Hutchins, and Woodall were all in custody in the Marion County Jail. On June 1, 2017, and on September 4, 2018, the State filed motions to separate Woodall and Achenbach in the jail, alleging that "[t]he State fears for Devin Achenbach's ability to give fair and impartial testimony due to [his] proximity and ability to be intimidated by Defendant." (Appellant's Conf. App. Vol. II, pp. 79, 142). On September 28, 2017, the State filed a similar motion pertaining to Patrick. The trial court judge, who presided over Woodall's trial and sentencing hearings, granted all the State's motions. Woodall does not address the trial court's grant of these motions which lend some support from the record for the trial court's finding that Woodall had threatened witnesses to prevent them from testifying.

[21] Assuming, without deciding, that this aggravating circumstance was not clearly supported by the record and was, therefore, an abuse of discretion, we do not find that remand for resentencing is necessary. When a trial court abuses its discretion by considering an improper aggravating circumstance, we remand for sentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. Here, the trial court

found as additional aggravating circumstances Woodall's violation of the terms of his pre-trial release in three other open criminal cases and the nature of the offense. The trial court made a detailed statement about why it considered the nature of the offense to be aggravating, citing the brutality of the crime committed against a victim who had trusted Woodall and opened the door of her home to him, Woodall's history of substance abuse, his planning of the offense, Woodall's request to Achenbach to kill Coulson, and the fact that Woodall could have changed his mind at any time but did not. In light of these other aggravating circumstances which Woodall does not dispute were valid, we can say with confidence that the trial court would have imposed the same sentence even if it had not considered the fact that Woodall threatened witnesses. *See id*.

## II. *Mitigating Circumstances*

[22] Woodall argues that the trial court also abused its discretion when it identified and weighed the mitigating circumstances. We begin by noting that a trial court is not obligated to credit a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State,* 736 N.E.2d 246, 249 (Ind. 2000). In order to be persuasive, a claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence was both significant and clearly supported by the record. *Anglemyer,* 868 N.E.2d at 493.

### A. *Military Service*

[23] Woodall contends that the trial court abused its discretion when it failed to accord his military service more weight as a mitigating circumstance. However, the relative weight ascribed by a trial court to a mitigating factor is no longer subject to our review on appeal. *See Anglemyer*, 868 N.E.2d at 491. The trial court acknowledged that Woodall's honorable military service was a mitigating circumstance but found that it could not "give it the weight I would like to be able to give." (Tr. Vol. IV, p. 77). Our scope of review precludes us from crediting Woodall's argument. *See id*.

### B. *Mental Health*

[24] Woodall's final argument is that the trial court abused its discretion when it failed to find his mental health to be a mitigating circumstance because it was advanced at sentencing, was clearly supported by the record, and was significant. However, our supreme court has suggested that a trial court exercise a high degree of discernment when considering if a claimed mental illness has mitigating weight. *Covington v. State*, 842 N.E.2d 345, 349 (Ind. 2006). Factors to be considered by the trial court include "the extent of the inability to control behavior, the overall limit on function, the duration of the illness, and the nexus between the illness and the crime." *Id*.

[25] Here, the record contains scant support apart from Woodard's self-report in his PSI that he had ADD and PTSD. Even if the existence of those conditions were clearly supported by the record, the record is utterly devoid of any evidence that Woodall's ADD and PTSD resulted in any inability to control his

behavior, limited his function, or had any nexus with Coulson's murder whatsoever. Indeed, on appeal, Woodall does not even attempt to argue that his PTSD and ADD had anything to do with murdering Coulson. Therefore, we find that his argument on this issue also fails. *See Weedman v. State*, 21 N.E.3d 873, 894 (Ind. Ct. App. 2014) (finding no abuse of the trial court's discretion in failing to identify Weedman's mental health as a mitigating circumstance where he failed to show a nexus between his mental health and the offense), *trans. denied*.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it identified the aggravating and mitigating circumstances for sentencing.

Affirmed.

Mathias, J. and Tavitas, J. concur